THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BEAN LLC d/b/a FUSION GPS<br>   1700 Connecticut Ave., NW,<br>   Suite 400<br>   Washington, DC 20009,<br><br>          Plaintiff,<br><br>          v.<br><br>DEFENDANT BANK,<br><br>          Defendant. | Civil Action No. |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Acting *ultra vires*, Congressman Devin Nunes ("Mr. Nunes") has signed and issued an exceedingly broad subpoena demanding that a bank to produce two years' worth of it customer Plaintiff Bean LLC d/b/a Fusion GPS's ("Fusion's") irrelevant but private financial records, without even notifying Fusion of the subpoena, in violation of the Right to Financial Privacy Act. The broad, *ultra vires* subpoena also demands documents that would reveal the identities of Fusion's clients, on whose behalf Fusion conducted confidential political research; thus, disclosure of the bank records would violate the First Amendment rights of Fusion and its clients to engage in free political speech and free association.

2. Mr. Nunes served on Mr. Trump's presidential campaign and recused himself from the U.S. House of Representatives Permanent Select Committee on Intelligence's ("HPSCI" or "Committee") "investigation" of Russian influence on that campaign. But he has since emerged – in violation of his recusal and acting *ultra vires* – to sign and issue a subpoena

to a bank, Defendant Bank,[1] for Fusion's financial records in violation of statutory and First Amendment rights. The *ultra vires* issuance of this subpoena is not a legitimate legislative activity. Although the bank submitted objections, Mr. Nunes – through staff – rejected them. In light of that communication, the bank then informed its customer that the bank was going to timely comply with the *ultra vires* subpoena on October 23, 2017, even though compliance will violate the statutory and First Amendment rights of both its customer (Fusion) and Fusion's clients.

3. Fusion brings this action to prevent its bank, Defendant Bank, from imposing irreparable harm by disclosing Plaintiff's records in violation of the First Amendment, the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.*, and the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, in response to the Mr. Nunes' *ultra vires* subpoena. Plaintiff seeks a declaratory judgment and injunction preventing Defendant Bank from taking any further action to comply with Mr. Nunes' *ultra vires* subpoena served on Defendant Bank, for Plaintiff's records and documents related thereto.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 12 U.S.C. § 3416 (Right to Financial Privacy Act) and 28 U.S.C. § 1331 (federal question). Plaintiff seeks remedies under 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act) and 12 U.S.C. § 3418 (Right to Financial Privacy Act).

5. Venue is proper under 28 U.S.C. § 1391(b).

---

[1] Contemporaneously with the filing of this Complaint, Plaintiff has filed a Motion for Defendant to Proceed Under a Pseudonym, which sets forth the basis upon which Plaintiff seeks to protect the identity of Defendant Bank.

## PARTIES

6. Plaintiff Bean LLC d/b/a Fusion GPS is incorporated in Delaware, and its principal place of business is in Washington, DC.

7. Plaintiff is a partnership of five or fewer individuals and thus a "person" under the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401(4). Plaintiff is a "customer" of Defendant Bank under the RFPA. 12 U.S.C. § 3401(5).

8. Plaintiff is a "consumer" for purposes of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*

9. Defendant Bank is a national bank headquartered outside of the District of Columbia, but within the United States of America. Defendant Bank is a "financial institution" for purposes of the Right to Financial Privacy Act, 35 U.S.C. § 3401(1). It has multiple branch offices in the District of Columbia.

## FACTUAL ALLEGATIONS

10. Plaintiff Bean LLC d/b/a Fusion GPS has been an accountholder and customer of Defendant Bank from January 11, 2016 to the present. Plaintiff opened the account at one of Defendant Bank's branch offices in the District of Columbia.

11. Plaintiff is a research firm that provides strategic intelligence and due diligence services to corporations, law firms, and investors worldwide. From time to time, it engages in political activity by performing opposition research on political candidates.

12. During the 2016 presidential election campaign, various clients hired Plaintiff to conduct political opposition research on then-candidate Donald J. Trump.

13. As part of their association with Plaintiff, those clients entered into contracts with Plaintiff to conduct political opposition research on the qualifications of Candidate Trump and paid Plaintiff for that work.

14. On information and belief, those payments from clients who associated with Plaintiff for purposes of engaging in political activity are recorded in Plaintiff's financial records held by Defendant Bank.

15. In the course of its political opposition research, Plaintiff contracted with a former British intelligence official to research Donald J. Trump's ties to Russia. This research led to a series of memos, referred to in the news media as the "Trump Dossier."

16. In reaction to the "Trump Dossier," President Trump and certain Republican chairs of congressional committees have launched a campaign to demonize Plaintiff and to chill Plaintiff and anyone else from conducting any future confidential opposition research on President Trump and his political confederates. Just yesterday, President Trump tweeted: "Workers of firm involved with the discredited and Fake Dossier take the 5th. Who paid for it, Russia, the FBI or the Dems (or all)?" *See* Donald J. Trump, @realDonaldTrump, Oct. 19, 2017, 6:56 am., *available at* https://twitter.com/realDonaldTrump/status/920981920787386368.

17. One of these presidential allies is Mr. Nunes, who served on President Trump's campaign, vetted many of his putative nominees during the presidential transition, and chairs HPSCI.

18. Despite it not having passed a public, formal, unambiguous resolution authorizing any investigation into Russian interference with the 2016 election, HPSCI has conducted an unauthorized "Russia investigation."

19. This investigation has been troubled from the start. In early April 2017, the House Ethics Committee began investigating Mr. Nunes for alleged misconduct—making unauthorized disclosures of classified information—arising out of the "Russia investigation." On April 6, 2017, Mr. Nunes announced his recusal from "the Russia investigation." Press Release, "Statement of the Chairwoman and Ranking Member of the Committee on Ethics Regarding Representative Devin Nunes," Apr. 6, 2017, *available at* https://ethics.house.gov/press-release/statement-chairwoman-and-ranking-member-committee-ethics-regarding-representative-0.

20. With the House Ethics Committee investigation pending, in May 2017, Mr. Nunes emerged to issue subpoenas in "the Russia investigation." In response, HPSCI's Ranking Member Rep. Adam Schiff stated that the authority to issue subpoenas in the investigation "should have been delegated to [Rep.] Mike Conaway in consultation with myself. That hasn't happened yet, … [a]nd I think that's a violation of the recusal by the Chairman." Russell Berman, "The Un-Recusal of Devin Nunes," *The Atlantic*, Jun. 1, 2017, *available at* https://www.theatlantic.com/politics/archive/2017/06/the-un-recusal-of-devin-nunes/528882/. Mr. Nunes' signature on those subpoenas was another sign of his rogue inquiry being run in parallel to HPSCI's "Russia investigation."

**Mr. Nunes' Subpoena on Defendant Bank**

21. Acting *ultra vires*, Mr. Nunes, on October 4, 2017, served Defendant Bank with a subpoena demanding **_all_** of Plaintiff's financial records from August 2015 through the present (hereinafter "the bank subpoena"), without the written authorization of Mr. Conaway, the Ranking Member or a vote of the full committee (*i.e.*, HPSCI).

22. Mr. Nunes did not notify Plaintiff of the *ultra vires* bank subpoena for Plaintiff's records and documents related thereto.

23. On October 13, 2017, Defendant Bank's counsel confirmed to Plaintiff's counsel that Mr. Nunes had served the *ultra vires* subpoena on Defendant Bank for **_all_** of Plaintiff's bank records from August 2015 through the present. Levy Decl. ¶ 2. Defendant Bank's counsel also informed Plaintiff's counsel that it had received an extension to respond to the subpoena, until October 23, 2017, at 9:00 am.

24. On October 18, 2017, Defendant Bank's counsel provided Plaintiff's counsel with a copy of the bank subpoena. Levy Decl. ¶ 3 & Ex. A.

25. The bank subpoena bears only the signature of Mr. Nunes. He thus unilaterally issued the subpoena in violation of his recusal from the committee's Russia investigation.

26. Nothing included within, or attached to, the *ultra vires* bank subpoena indicates that Rep. Michael Conaway, to whom Mr. Nunes abdicated leadership of the investigation, authorized Mr. Nunes to sign the *ultra vires* bank subpoena.

27. The *ultra vires* bank subpoena does not indicate that Mr. Nunes had any prior consultation with Rep. Michael Conaway or the Committee's Ranking Member Rep. Adam Schiff.

28. HPSCI Committee Rule 10(e) provides that "[e]ach subpoena shall have attached thereto a copy of these rules."[2] But the bank subpoena issued did not include a copy of the Committee's rules.

---

[2] *Rules of Procedure for the Permanent Select Committee on Intelligence, U.S. House of Representatives*, § 10(e), *available at* https://intelligence.house.gov/uploadedfiles/hpsci_rules_of_procedure_-_115th_congress.pdf.

6

29. The *ultra vires* bank subpoena does not attach a formal, unambiguous resolution, but only an excerpt of what appears to be a press release discussing the "parameters" of the investigation.

30. The records demanded through the *ultra vires* bank subpoena would reveal the identities of **_all_** of Plaintiff's clients, contractors and vendors, most of whom have zero relevance or pertinency to HSPCI's "Russia investigation." Some of those clients, contractors and vendors engaged with Plaintiff in furtherance of confidential political activity.

31. The records sought would disclose financial transactions in furtherance of political speech and activity.

32. The records sought would also disclose confidential attorney work product.

33. The subpoena is a blatant attempt to chill both speech with which Mr. Nunes disagrees and the free association of Americans working on a campaign against Donald Trump. It is a fishing expedition for the names of *all* of Plaintiff's clients and vendors in order to unearth the non-pertinent fact of the names of the clients that paid Plaintiff to engage in political activity – namely, opposition research on Mr. Trump, during the 2016 election.

34. Disclosure of the records would immediately deter Plaintiff and its clients from participating in political speech and activity and prevent them from associating anonymously for purposes of engaging in political activity, such as research on candidates running for office. The very threat of this disclosure has already caused a change in the way in which Plaintiff has conducted business and communicated internally and externally.

35. When Plaintiff's counsel became suspicious that a subpoena may have been served on Defendant Bank for Plaintiff's records, Plaintiff's counsel contacted Defendant Bank in order to object to its release of Plaintiff's financial records to any third party.

36. Plaintiff has not authorized disclosure of its financial records from Defendant Bank.

37. Plaintiff's counsel informed Defendant Bank's counsel that Plaintiff objects to Defendant Bank's compliance with the subpoena, supported by points and authorities.

38. On information and belief, later on October 18, 2017, Defendant Bank's counsel sent Mr. Nunes, Rep. Conaway and Ranking Member Schiff a letter setting forth Defendant Bank's objections to the subpoena.

39. On October 19, 2017, Mr. Nunes' staff informed Defendant Bank's counsel that the bank's "objections, claims of privilege, and any other mechanisms to invalidate the Subpoena" were declined. Levy Decl. ¶ 4.

40. After receiving the October 19, 2017, communication from Mr. Nunes' staff, Defendant Bank's counsel informed Plaintiff's counsel that "[Defendant Bank] intends to comply with the Subpoena." Levy Decl. ¶ 4.

41. Defendant Bank has never provided Plaintiff with notice and the opportunity to direct that Defendant Bank not disclose Plaintiff's bank records and documents related thereto, in response to Mr. Nunes' *ultra vires,* unauthorized subpoena, as required by federal privacy laws.

42. On October 19, 2017, Plaintiff's counsel reached out to the staff of Mr. Nunes and the Committee in order to request a 48-hour extension of the subpoena's compliance date, so that Plaintiff and staff could resolve the matter without having to resort to judicial review. Staff, however, rejected the request. *See* Levy Decl., Exh. C.

43. Plaintiff had no choice but to file this lawsuit to prevent the imminent disclosure of its financial records.

44. By intending to comply with Mr. Nunes' *ultra vires* subpoena, Defendant Bank infringes on Plaintiff's statutory and constitutional rights and certainly will violate them upon compliance with the *ultra vires* subpoena.

## FIRST CAUSE OF ACTION
### (Subpoena Is Not Part of Legitimate Legislative Activity)

45. Mr. Nunes has acted *ultra vires* in issuing the subpoena. He is recused from leading the "Russia investigation" and has no authority to sign the subpoena. No documentation of any such authority was attached to the subpoena

46. The subpoena does not comply with HPSCI rules because, *inter alia*, Mr. Nunes lacked the authority to sign and issue the subpoena, and the subpoena did not include a copy of the HPSCI rules.

47. No public, formal, unambiguous HPSCI resolution authorizes this investigation. No such resolution was attached to the subpoena.

48. Therefore, the subpoena is invalid, is not part of legitimate legislative activity, and thus is unlawful.

## SECOND CAUSE OF ACTION
### (Violation of Right to Financial Privacy Act)

49. The RFPA prohibits Defendant Bank from releasing any records in response to the October 4, 2017, bank subpoena for Plaintiff's records and documents related thereto because Plaintiff has not authorized such disclosure and Mr. Nunes, acting as a Government authority, and purportedly on behalf of HPSCI, has not complied with the provisions of the RFPA for seeking access to such records. 12 U.S.C. §§ 3402-3403, 3405-3408.

50. Defendant Bank's release of records would violate the RFPA because Mr. Nunes did not give Plaintiff, a "customer" under the RFPA, the required notice of the October 4, 2017,

bank subpoena, including notice of the right to challenge the subpoena in court. 12 U.S.C. §§ 3405(2) (administrative subpoena), 3407(2) (judicial subpoena); 3408(4) (formal written request).

51. Defendant Bank would violate the RFPA by releasing Plaintiff's records and documents related thereto because the subpoena was not issued pursuant to a "legitimate law enforcement inquiry," 12 U.S.C. §§ 3407, 3408, nor was it authorized by law. Id. § 3405.

52. Defendant Bank would violate the RFPA by releasing Plaintiff's records because Mr. Nunes cannot certify to Defendant Bank that he has complied with the applicable provisions of the RFPA; thus, Defendant Bank is prohibited from releasing Bean LLC's financial records to the Committee. 12 U.S.C. § 3503.

53. Defendant Bank has informed Plaintiff that Defendant Bank intends to comply with the subpoena by 9:00 am, Monday, October 23, 2017, after Mr. Nunes – through staff – informed Defendant Bank counsel that all "objections, claims of privilege, and any other mechanisms to invalidate the Subpoena" were declined.

54. Plaintiff is immediately in danger of having its records disclosed in violation of its rights under the RFPA.

55. If Defendant Bank releases the records in response to the subpoena, Plaintiff's rights under the RFPA will be violated and irretrievably lost and Plaintiff will suffer irreparable harm.

56. Plaintiff seeks a preliminary and permanent injunction forbidding Bank from releasing its financial records in response to this subpoena.

57. There is no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Violation of Gramm-Leach-Bliley Act)

58. Under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.*, "[i]t is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." *Id.* § 6801(a).

59. The Gramm-Leach-Bliley Act provides that "a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies" with the provisions of the Act, and the opportunity to opt out of disclosure of its records to a nonaffiliated third party. 15 U.S.C. § 6801.

60. Plaintiff is a "consumer" under the Gramm-Leach-Bliley Act.

61. Defendant Bank's compliance with the invalid subpoena would violate the Gramm-Leach-Bliley Act because Defendant Bank has not given notice of its intended disclosure to Plaintiff and the opportunity for Plaintiff to opt out of this disclosure.

62. Plaintiff seeks a declaratory judgment that Defendant Bank's disclosure would violate the Gramm-Leach-Bliley Act and an order enjoining Defendant Bank, from violating the Act.

63. There is no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### (Violation of First Amendment)

64. The First Amendment of the U.S. Constitution protects Plaintiff's and its clients' free political speech, such as discussion and investigation of the character and qualifications of a

11

candidate for president. The First Amendment also protects Plaintiff's and its clients' rights to associate freely and anonymously with others to engage in political activity.

65. Defendant Bank's compliance with the subpoena, caused by Mr. Nunes' threat of holding Defendant Bank in contempt should it not comply, will deny Plaintiff and its clients their rights to free speech and expressive association as guaranteed by the First Amendment to the Constitution of the United States.

66. Mr. Nunes' issuance of the October 4, 2017, bank subpoena constitutes a broad and impermissible inquiry into Plaintiff's and its clients' constitutionally protected free speech and free association activities protected under the First Amendment.

67. It demands the production of records reflecting those who hired and worked with Plaintiff on confidential opposition research conducted on a presidential candidate. The subpoena was issued in bad faith for purposes of harassing Plaintiff and its clients, exposing for the sake of exposure and making inquiries into matters not pertinent to the questions under inquiry.

68. Compliance with this subpoena would infringe the right of Plaintiff and its clients to associate freely and anonymously with others and to engage in free speech and political activity.

69. Furthermore, compliance with the subpoena would chill Plaintiff's and its clients' rights to oppose political candidates, express their political views on candidates for office, and to persuade others of their points of view about political candidates.

70. In complying with the subpoena, Defendant Bank would be acting in concert with Mr. Nunes to cause violations of the First Amendment rights of Plaintiff and its clients.

71. Defendant Bank's actions in complying with the subpoena are in reaction to Mr. Nunes' *ultra vires* use of compulsory process.

72. Using this *ultra vires* compulsory process, Mr. Nunes is inducing and coercing Defendant Bank to violate Plaintiff's and its clients First Amendment rights.

73. The materials demanded through this *ultra vires* subpoena are not relevant and are not pertinent to the questions under inquiry, even as defined by the "parameters" of the HPSCI investigation.

74. There is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that the subpoena is unauthorized, invalid, and not a legitimate legislative activity.

(2) Declare that Defendant Bank's compliance with the subpoena would violate the Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.,* and Plaintiff's rights within it.

(3) Declare that Defendant Bank's compliance with the subpoena would violate the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.,* and Plaintiff's rights within it.

(4) Declare that Defendant Bank's compliance with the subpoena would deprive Plaintiff and its clients of their First Amendment rights to free speech and free association, in violation of the U.S. Constitution.

(5) Preliminarily and permanently enjoin Defendant Bank from releasing Plaintiff's records to Mr. Nunes or HPSCI.

(6) Award Plaintiff its costs and reasonable attorney's fees in this action, 12 U.S.C. § 3418.

(5) Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury in the above-captioned action of all issues triable by jury

Dated: October 20, 2017

Respectfully Submitted,

*/s/ William W. Taylor, III*

William W. Taylor, III (D.C. Bar No. 84194)
Steven M. Salky (D.C. Bar No. 360175)
Rachel F. Cotton (D.C. Bar No. 997132)
**ZUCKERMAN SPAEDER LP**
1800 M Street, NW, Suite 1000
Washington, D.C. 20036
Tel: (202) 788-1800
wtaylor@zuckerman.com
ssalky@zuckerman.com
rcotton@zuckerman.com

Joshua A. Levy (D.C. Bar No. 475108)
Robert F. Muse (D.C. Bar No. 166868)
Rachel M. Clattenburg (D.C. Bar No. 1018164)
**CUNNINGHAM LEVY MUSE LLP**
1250 Connecticut Avenue, NW, Suite 200
Washington, D.C. 20036
Tel: (202) 261-6564
jal@cunninghamlevy.com
rmuse@cunninghamlevy.com
rmc@cunninghamlevy.com