# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BEAN LLC d/b/a FUSION GPS ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. |
| DEFENDANT BANK, ) | |
| Defendant. ) | |

## DECLARATION OF PETER FRITSCH IN SUPPORT OF
## FUSION'S UNOPPOSED MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

I, Peter Fritsch, declare as follows:

1. My name is Peter Fritsch, and I am of legal age and competent to give this declaration.

2. I am a member of Bean LLC d/b/a Fusion GPS ("Fusion GPS").

3. Fusion GPS is a partnership of four individuals.

4. Previously, I worked for the Wall Street Journal for 15 years.

5. Fusion GPS was founded by experienced investigative journalists who apply investigative reporting skills to Fusion's clients' projects and needs.

6. Fusion GPS engages in research and investigation on behalf of its clients. Our clients include private sector businesses and individuals, as well as political organizations and politicians on both the left and the right. Our engagements frequently relate to political matters of public importance, including but not limited to research about political candidates and issues.

1

7. Our techniques and investigative tools for our research and investigation go beyond standard open-source methods. Fusion GPS has an extensive network of domestic and international contacts, built up over many years of reporting.

8. Fusion GPS tells our clients at the outset of any engagement that we will maintain the confidentiality of the engagement, and we maintain the confidentiality of the identity of our clients and our sources, unless a client or source instructs otherwise.

9. During the U.S. presidential race, Fusion GPS was hired to research and investigate then-candidate Donald J. Trump. As part of the engagement, Fusion GPS hired Christopher Steele to investigate Trump's ties to Russia. In the course of that work, Mr. Steele produced a series of memoranda that have become known as the "Trump Dossier."

10. The identity of Fusion's clients in the engagement is confidential and has remained confidential.

11. The subpoena seeks extensive and intrusive discovery from Fusion GPS about financial records, which will reveal all of our clients in the past two and a half years (not just the client(s) related to the Trump Dossier) and thousands of financial transactions—the vast majority of which have nothing whatsoever to do with the Trump Dossier.

12. Fusion GPS has not authorized Defendant Bank to disclose its banking records to a third party.

13. Defendant Bank has never provided Fusion GPS with notice and the opportunity to direct that Defendant Bank not disclose Plaintiff's bank records and documents related thereto in response to the subpoena.

14. Our financial information is intensely private and confidential, as are the identities of our clients. Requiring us to reveal this information would chill our and our clients' First Amendment

rights to engage in political activity, political speech, to speak anonymously, to associate freely with others, and to petition the government.

15. Forced disclosure of our internal communications and documents would make our organization less willing to communicate freely with our clients, our contractors and collaborators, and amongst ourselves. Compulsory disclosure of the same materials would likewise make organizations similar to ours less willing to engage in confidential opposition research on powerful figures in American politics. Likewise, forced disclosure of our communications and work product would make candidates, political organizations, and others less willing to conduct confidential opposition research on powerful figures in American politics.

16. Forced disclosure of our internal communications and documents would make it more difficult for us to research and investigate matters of public concern. Sources will be less likely to confide in us. Collaborators will be less likely to associate with us. Clients will be less likely to hire us. And we will be less likely to undertake sensitive political research assignments for fear of having to disclose our sources, clients, work product and/or internal communications or documents.

17. The threat of disclosure has already changed how we conduct business. We have changed how we communicate internally, as well externally with clients.

18. As a result of the publicity around the Trump Dossier, Fusion GPS has been the subject of extensive and inflammatory media coverage. It has been maligned in the media as "a disinformation firm," as improperly receiving money from Russians, as a professional smear organization, as partisan operatives, and far worse. The organization and its principals have received threatening communications, including death threats.

19. Additionally, the organization and its principals have been the subject of a number of criminal hacking attempts, including attempts which may have originated in Russia.

20. If Fusion GPS was forced to expose our clients' identity, those clients would be exposed to the kind of harassment to which Fusion GPS has been subjected.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   October 19, 2017                                              _____
                                                                                                      Peter Fritsch