**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| BEAN LLC d/b/a FUSION GPS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| DEFENDANT BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF JOSHUA A. LEVY IN SUPPORT OF**
**PLAINTIFF BEAN LLC'S COMPLAINT AND UNOPPOSED MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Joshua A. Levy, declare as follows:

1. I am counsel for Plaintiff Bean LLC d/b/a Fusion GPS.

2. On October 13, 2017, counsel for Defendant Bank ("the bank"), confirmed to me that Congressman Devin Nunes had served on the bank a subpoena demanding Plaintiff's banking records from August 2015 through the present (hereinafter "the bank subpoena").

3. On October 18, 2017, bank counsel provided me with a copy of the bank subpoena. A true and correct copy of that subpoena is attached hereto as Exhibit A. Bank counsel also informed me that it had received an extension of time to respond to the subpoena, until October 23, 2017, at 9:00 am. I informed bank counsel, *via* electronic mail, that Plaintiff objected to the subpoena and the bank's compliance with it, supported by points and authorities.

4. On October 19, 2017, bank counsel informed me, *via* electronic mail, that Mr. Nunes' staff had declined the bank's "objections, claims of privilege, and any other mechanisms to invalidate the Subpoena," and that "[Defendant Bank] intends to comply with the Subpoena."

5. On October 19, 2017, I reached out to the staff of Mr. Nunes and the Committee in order to request a 48-hour extension of the subpoena's compliance date, so that Plaintiff and staff could resolve the matter without having to resort to judicial review. Staff, however, rejected the request. A true and correct copy of staff's email rejecting the request is attached hereto as Exhibit C.

6. I have printed a true and correct copy of the U.S. House of Representatives Permanent Select Committee on Intelligence Rules, and its attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 20, 2017

Joshua A. Levy

# EXHIBIT A

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

To ▨▨▨▨▨▨▨▨▨▨▨ Bank")

You are hereby commanded to be and appear before the

Permanent Select Committee on Intelligence

of the House of Representatives of the United States at the place, date, and time specified below.

☒ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: HVC-304, U.S. Capitol

Date: 10/13/2017                 Time: 12:00 p.m.

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                 Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                 Time: _____

To the United States Marshal Service or any authorized Member of Congress or congressional staff to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 4th day of October , 2017 .

_Devin Nunes_
Chairman or Authorized Member

Attest:

_Karen L. Haas_
Clerk

137804

# PROOF OF SERVICE

Subpoena for

███████████████████████████████████████████

before the Permanent Select Committee on Intelligence

U.S. House of Representatives
115th Congress

Served by (print name) Nicholas A. Ciarlante

Title Chief Clerk

Manner of service By fax + USPS

Date 4 OCT 2017

Signature of Server Nicholas A. Ciarlante

Address

## Schedule A

In accordance with the attached schedule instructions, ████████████████████████, is required to produce to the Committee complete and unredacted copies of the following for the time period August 1, 2015 – present ("Relevant Time Period"):

1. Documents sufficient to identify any property, including assets or accounts, maintained at ████████ nywhere in the world in the name(s) of "Bean L.L.C.," "Fusion GPS," "Kernel L.L.C.," "Caudex L.L.C.," or a subsidiary thereof, Glenn Simpson, Peter Fritsch, and/or Thomas Catan. Accounts to be included, but not limited to, Account Number ████████

2. Documents sufficient to identify current account balance, currency, and as-of date for all accounts identified in the response to Request 1.

3. Documents sufficient to identify how long all accounts identified in the response to Request 1 have been active.

4. All documents related to the closure (including any part initiating the closure) for all accounts identified in response to Request 1 that were closed during the Relevant Time Period.

5. Transaction history for the Relevant Time Period for all accounts identified in response to Request 1.

6. All documents evidencing transaction activity in all identified accounts, including all reports used to monitor compliance with the Bank Secrecy Act, Anti-Money Laundering Act, or Office of Foreign Assets Control reporting requirements for all accounts identified in response to Request 1.

7. All documents concerning all ████ messages, including ████████████ message types, received or transmitted during the Relevant Time Period related to transactions conducted through ████████████ portal related to any of the accounts identified in response to Request 1.

8. All documents concerning any advisory, investment banking, capital markets, commercial banking or other financial services provided during the Relevant Time Period by ████████ o "Bean L.L.C.," "Fusion GPS," "Kernel L.L.C.," "Caudex L.L.C.," or a subsidiary thereof, Glenn Simpson, Peter Fritsch, and/or Thomas Catan.

9. All documents concerning any other services, including servies as agent, broker, dealer, underwriter, trading agent, asset manager, representative or nominee provided during the Relevant Time Period by ▮▮▮▮▮ to "Bean L.L.C.," "Fusion GPS," "Kernel L.L.C.," "Caudex L.L.C.," or a subsidiary thereof, Glenn Simpson, Peter Fritsch, and/or Thomas Catan.

10. All documents concerning any applications for loans, commercial or standby letters of credit, or any extension of credit during the Relevant Time Period for which "Bean L.L.C.," "Fusion GPS," "Kernel L.L.C.," "Caudex L.L.C.," or a subsidiary thereof, Glenn Simpson, Peter Fritsch, and/or Thomas Catan is the applicant, beneficiary, borrower, or guarantor or that was made or guaranteed by any of them for their benefit.

## Definitions

1. The term "Committee" as used in Schedule A of this subpoena means the Permanent Select Committee on Intelligence of the United States House of Representatives.

2. The term "recording" as used in Schedule A of this subpoena means any recording of images and/or sounds, regardless of the medium or technology used to capture and/or maintain such images and/or sounds.

3. The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of how recorded, and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, working papers, records notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, interoffice and intra office communications, electronic mail (e-mail), contracts, cables, notations of any type of conversation, telephone call, meeting or other communication, bulletins, printed matter, computer printouts, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

4. The terms "related" and "relating" as used in Schedule A of this subpoena with respect to any given subject, shall be construed broadly to mean anything that constitutes, contains, embodies, reflects, identifies, concerns, states, refers to, deals with or is in any manner whatsoever pertinent to the subject.

5. The terms "including" and "includes," as used in Schedule A of this subpoena with respect to any given subject, shall be construed broadly so that specification of any particular matter shall not be construed to exclude any documents that you have reason to believe the Committee might regard as responsive.

6. The terms "you" and "your" as used in Schedule A of this subpoena include all offices, individuals, or entities within the Central Intelligence Agency, including, without limitation, anyone presently or formerly employed by, assigned to, or detailed there.

## Instructions

1. In complying with this Subpoena, you are required to produce all responsive documents that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. You are also required to produce documents that you have a legal right to obtain, that you have a right to copy or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party. No records, documents, data or information called for by this request shall be destroyed, modified, removed, transferred or otherwise made inaccessible to the Committee.

2. In the event that any entity, organization or individual denoted in this subpoena has been, or is also known by any other name than that herein denoted, the subpoena shall be read also to include them under that alternative identification.

3. Each document produced shall be produced in a form that renders the document capable of being copied.

4. Documents produced in response to this subpoena shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when this subpoena was served. Also identify to which paragraph from the subpoena such documents are responsive.

5. It shall not be a basis for refusal to produce documents that any other person or entity also possesses non-identical or identical copies of the same document.

6. If any of the subpoenaed information is available in machine-readable form (such as punch cards, paper or magnetic tapes, drums, disks, or core storage), state the form in which it is available and provide sufficient detail to allow the information to be copied to a readable format. If the information requested is stored in a computer, indicate whether you have an existing program that will print the records in a readable form.

7. If compliance with the subpoena cannot be made in full, compliance shall be made to the extent possible and shall include an explanation of why full compliance is not possible.

8. In the event that a document is withheld on the basis of privilege, provide the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee; (e) all recipients; and (e) the relationship of the author, addressee, and recipients to each other.

9. Any objections or privileges are waived if you fail to provide an explanation of why full compliance is not possible and a privilege log prior to the subpoena compliance date.

10. In complying with the subpoena, be apprised that the U.S. House of Representatives and the Committee do not recognize: any purported non-disclosure privileges associated with the common law including, but not limited to, the deliberative process privilege, the attorney-client privilege, and attorney work product protections; any pm-ported privileges or

protections from disclosure under the Freedom of Information Act; or any purported contractual privileges, such as non-disclosure agreements.

11. If any document responsive to this subpoena was, but no longer is, in your possession, custody, or control, identify the document (stating its date, author, subject and recipients) and explain the circumstances by which the document ceased to be in your possession, custody, or control.

12. If a date or other descriptive detail set forth in this subpoena referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, you should produce all documents which would be responsive as if the date or other descriptive detail were correct.

13. This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data or information, not produced because it has not been located or discovered by the return date, shall be produced immediately upon location or discovery subsequent thereto.

14. Production with respect to each document shall include all electronic versions and data files from email applications as well as from word processing, spreadsheet, or other electronic or magnetic data repositories applicable to any attachments, and shall be provided to the Committee where possible in its native file format and shall include all original metadata for each electronic documents or data file.

15. All documents shall be bates-stamped sequentially and produced sequentially.

16. Two sets of documents shall be delivered, one set to the Majority Staff and one set to the Minority Staff. When documents are produced to the Committee, production sets shall be delivered to the Committee in Room HVC-304 of the United States Capitol Building.

**Intelligence Committee Chairman, Ranking Member Establish Parameters for Russia Investigation**
Washington, March 1, 2017

Chairman Nunes and Ranking Member Schiff have approved the Scope of Investigation for the inquiry by the House Permanent Select Committee on Intelligence into the Russian active measures campaign targeting the 2016 U.S. election. While the detailed, six-page scoping document remains classified, the investigation will seek to answer the following questions:

- What Russian cyber activity and other active measures were directed against the United States and its allies?

- Did the Russian active measures include links between Russia and individuals associated with political campaigns or any other U.S. Persons?

- What was the U.S. Government's response to these Russian active measures and what do we need to do to protect ourselves and our allies in the future?

- What possible leaks of classified information took place related to the Intelligence Community Assessment of these matters?

To answer these questions, the Committee will seek access to and custody of all relevant information, including law enforcement and counterintelligence information, consistent with the Committee's oversight jurisdiction and investigative responsibilities. The Committee's inquiry will not, however, impede any ongoing investigation.

The Committee will also conduct interviews, take witness testimony, and review all reporting underlying the Intelligence Community Assessment (ICA) "Russian Activities and Intentions in Recent US Elections." The inquiry will seek to ensure that the ICA comported with all relevant Intelligence Community analytic standards, and that allegations of Russian collusion with any U.S. Persons and the leaks of classified information are fully investigated. While the Committee has access to the reporting underlying the ICA, the Scope of Investigation reiterates the need to expand access to those documents and to ensure they are delivered to and stored at the Committee. It also sets forth the expectation that the Intelligence Community provide any other relevant intelligence to the Committee.

Chairman Nunes said, "The Intelligence Committee has been investigating Russia for years and warning about the Putin regime's hostile international actions, its aggression in cyber space, and its influential international propaganda campaigns. The committee is determined to continue and expand its inquiries into these areas, including Russian activities related to the 2016 U.S. elections. On a bipartisan basis, we will fully investigate all the evidence we collect and follow that evidence wherever it leads."

Ranking Member Schiff stated, "The House Intelligence Committee must conduct a bipartisan investigation into Russia's interference in our election. We must follow the facts wherever they may lead, leaving no stone unturned, and that must also include both the Russian hacking and dumping of documents as well as any potential collusion between Russia and U.S. citizens. This investigation is a national security necessity and anything less than a full accounting of all the facts will be insufficient to protect the country and meet the expectations of the American people."

# EXHIBIT B

## RULES OF PROCEDURE
## FOR THE PERMANENT SELECT COMMITTEE ON INTELLIGENCE
## UNITED STATES HOUSE OF REPRESENTATIVES
## 115TH CONGRESS

## 1. MEETING DAY

Regular Meeting Day for the Full Committee. The regular meeting day of the Committee for the transaction of Committee business shall be the first Thursday of each month, unless otherwise directed by the Chair.

## 2. NOTICE FOR MEETINGS

(a) Generally. In the case of any meeting of the Committee, the Chief Clerk of the Committee shall provide reasonable notice to every member of the Committee. Such notice shall provide the time, place, and subject matter of the meeting, and shall be made consistent with the provisions of clause 2(g)(3) of House Rule XI.

(b) Hearings. Except as provided in subsection (d), a Committee hearing may not commence earlier than one week after such notice.

(c) Business Meetings. Except as provided in subsection (d), a Committee business meeting may not commence earlier than the third day on which Members have notice thereof.

(d) Exception. A hearing or business meeting may begin sooner than otherwise specified in either of the following circumstances (in which case the Chair shall provide the notice at the earliest possible time):

> (1) the Chair, with the concurrence of the Ranking Minority Member, determines there is good cause; or

> (2) the Committee so determines by majority vote in the presence of the number of members required under the rules of the Committee for the transaction of business.

(e) Definition. For purposes of this rule, "notice" means:

> (1) Written notification; or

> (2) Notification delivered by facsimile transmission, regular mail, or electronic mail.

## 3. PREPARATIONS FOR COMMITTEE MEETINGS

(a) Generally. Designated Committee Staff, as directed by the Chair, shall brief members of the Committee at a time sufficiently prior to any Committee meeting in order to:

(1) Assist Committee members in preparation for such meeting; and

(2) Determine which matters members wish considered during any meeting.

(b) Briefing Materials.

(1) Such a briefing shall, at the request of a member, include a list of all pertinent papers and such other materials that have been obtained by the Committee that bear on matters to be considered at the meeting; and

(2) The Staff Director shall also recommend to the Chair any testimony, papers, or other materials to be presented to the Committee at the meeting of the Committee.

## 4. OPEN MEETINGS

(a) Generally. Pursuant to House Rule XI, but subject to the limitations of subsections (b) and (c), Committee meetings held for the transaction of business and Committee hearings shall be open to the public.

(b) Meetings. Any meeting or portion thereof for the transaction of business, including the markup of legislation, or any hearing or portion thereof shall be closed to the public if the Committee determines by record vote in open session, with a majority of the Committee present, that disclosure of the matters to be discussed may:

(1) Endanger national security;

(2) Compromise sensitive law enforcement information;

(3) Tend to defame, degrade, or incriminate any person; or

(4) Otherwise violate any law or Rule of the House.

(c) Hearings. The Committee may vote to close a Committee hearing pursuant to clause 11(d)(2) of House Rule X, regardless of whether a majority is present, so long as at least two members of the Committee are present, one of whom is a member of the Minority and votes upon the motion.

(d) Briefings. Committee briefings shall be closed to the public.

## 5. QUORUM

(a) Hearings. For purposes of taking testimony, or receiving evidence, a quorum shall consist of two Committee members, at least one of whom is a member of the Majority.

(b) Reporting Measures and Recommendations. For purposes of reporting a measure or recommendation, a quorum shall consist of a majority of the Committee's members.

(c) Other Committee Proceedings. For purposes of the transaction of all other Committee business, other than the consideration of a motion to close a hearing as described in rule 4(c), a quorum shall consist of one-third of the Committee's members.

# 6. PROCEDURES FOR AMENDMENTS AND VOTES

(a) Amendments. When a bill or resolution is being considered by the Committee, members shall provide the Chief Clerk in a timely manner with a sufficient number of written copies of any amendment offered, so as to enable each member present to receive a copy thereof prior to taking action. A point of order may be made against any amendment not reduced to writing. A copy of each such amendment shall be maintained in the public records of the Committee.

(b) Reporting Record Votes. Whenever the Committee reports any measure or matter by record vote, the report of the Committee upon such measure or matter shall include a tabulation of the votes cast in favor of, and the votes cast in opposition to, such measure or matter.

(c) Postponement of Further Proceedings. In accordance with clause 2(h) of House Rule XI, the Chair is authorized to postpone further proceedings when a record vote is ordered on the question of approving a measure or matter or adopting an amendment. The Chair may resume proceedings on a postponed request at any time after reasonable notice. When proceedings resume on a postponed question, notwithstanding any intervening order for the previous question, an underlying proposition shall remain subject to further debate or amendment to the same extent as when the question was postponed.

(d) Availability of Record Votes on Committee Website. In addition to any other requirement of the Rules of the House, the Chair shall make the record votes on any measure or matter on which a record vote is taken, other than a motion to close a Committee hearing, briefing, or meeting, available on the Committee's website not later than 2 business days after such vote is taken. Such record shall include an unclassified description of the amendment, motion, order, or other proposition, the name of each member voting in favor of, and each member voting in opposition to, such amendment, motion, order, or proposition, and the names of those members of the Committee present but not voting.

# 7. SUBCOMMITTEES

(a) Generally.

    (1) Creation of subcommittees shall be by majority vote of the Committee.

    (2) Subcommittees shall deal with such legislation and oversight of programs and policies as the Committee may direct.

    (3) Subcommittees shall be governed by these rules.

(4) For purposes of these rules, any reference herein to the "Committee" shall be interpreted to include subcommittees, unless otherwise specifically provided.

(b) Establishment of Subcommittees. The Committee establishes the following subcommittees:

    (1) Subcommittee on the Central Intelligence Agency;

    (2) Subcommittee on the National Security Agency and Cybersecurity

    (3) Subcommittee on Emerging Threats; and

    (4) Subcommittee on Department of Defense Intelligence and Overhead Architecture.

(c) Subcommittee Membership.

    (1) Generally. Each member of the Committee may be assigned to at least one of the subcommittees.

    (2) *Ex Officio* Membership. In the event that the Chair and Ranking Minority Member of the full Committee do not choose to sit as regular voting members of one or more of the subcommittees, each is authorized to sit as an *ex officio* member of the subcommittees and participate in the work of the subcommittees. When sitting *ex officio*, however, they:

        (A) Shall not have a vote in the subcommittee; and

        (B) Shall not be counted for purposes of determining a quorum.

(d) Regular Meeting Day for Subcommittees. There is no regular meeting day for subcommittees.

## 8. PROCEDURES FOR TAKING TESTIMONY OR RECEIVING EVIDENCE

(a) Notice. Adequate notice shall be given to all witnesses appearing before the Committee.

(b) Oath or Affirmation. The Chair may require testimony of witnesses to be given under oath or affirmation.

(c) Administration of Oath or Affirmation. Upon the determination that a witness shall testify under oath or affirmation, any member of the Committee designated by the Chair may administer the oath or affirmation.

(d) Questioning of Witnesses.

    (1) Generally. Questioning of witnesses before the Committee shall be conducted by members of the Committee.

    (2) Exceptions.

        (A) The Chair, in consultation with the Ranking Minority Member, may determine that Committee Staff will be authorized to question witnesses at a hearing in accordance with clause (2)(j) of House Rule XI.

        (B) The Chair and Ranking Minority Member are each authorized to designate Committee Staff to conduct such questioning.

(e) Counsel for the Witness.

    (1) Generally. Witnesses before the Committee may be accompanied by counsel, subject to the requirements of paragraph (2).

    (2) Counsel Clearances Required. In the event that a meeting of the Committee has been closed because the subject to be discussed deals with classified information, counsel

accompanying a witness before the Committee must possess the requisite security clearance and provide proof of such clearance to the Committee at least 24 hours prior to the meeting at which the counsel intends to be present.

(3) Failure to Obtain Counsel. Any witness who is unable to obtain counsel should notify the Committee. If such notification occurs at least 24 hours prior to the witness' appearance before the Committee, the Committee shall then endeavor to obtain voluntary counsel for the witness. Failure to obtain counsel, however, will not excuse the witness from appearing and testifying.

(4) Conduct of Counsel for Witnesses. Counsel for witnesses appearing before the Committee shall conduct themselves ethically and professionally at all times in their dealings with the Committee.

    (A) A majority of members of the Committee may, should circumstances warrant, find that counsel for a witness before the Committee failed to conduct himself or herself in an ethical or professional manner.

    (B) Upon such finding, counsel may be subject to appropriate disciplinary action.

(5) Temporary Removal of Counsel. The Chair may remove counsel during any proceeding before the Committee for failure to act in an ethical and professional manner.

(6) Committee Reversal. A majority of the members of the Committee may vote to overturn the decision of the Chair to remove counsel for a witness.

(7) Role of Counsel for Witness.

    (A) Counsel for a witness:

        (i) Shall not be allowed to examine witnesses before the Committee, either directly or through cross-examination; but

        (ii) May submit questions in writing to the Committee that counsel wishes propounded to a witness; or

        (iii) May suggest, in writing to the Committee, the presentation of other evidence or the calling of other witnesses.

    (B) The Committee may make such use of any such questions, or suggestions, as the Committee deems appropriate.

(f) Statements by Witnesses.

    (1) Generally. A witness may make a statement, which shall be brief and relevant, at the beginning and at the conclusion of the witness' testimony.

(2) Length. Each such statement shall not exceed five minutes in length, unless otherwise determined by the Chair.

(3) Submission to the Committee. Any witness desiring to submit a written statement for the record of the proceeding shall submit a copy of the statement to the Chief Clerk of the Committee.

(A) Such statements shall ordinarily be submitted no less than 48 hours in advance of the witness' appearance before the Committee and shall be submitted in written and electronic format.

(B) In the event that the hearing was called with less than 24 hours notice, written statements should be submitted as soon as practicable prior to the hearing.

(g) Objections and Ruling.

(1) Generally. Any objection raised by a witness, or counsel for the witness, shall be ruled upon by the Chair, and such ruling shall be the ruling of the Committee.

(2) Committee Action. A ruling by the Chair may be overturned upon a majority vote of the Committee.

(h) Transcripts.

(1) Transcript Required. A transcript shall be made of the testimony of each witness appearing before the Committee during any hearing of the Committee.

(2) Opportunity to Inspect. Any witness testifying before the Committee shall be given a reasonable opportunity to inspect the transcript of the hearing, and may be accompanied by counsel to determine whether such testimony was correctly transcribed. Such counsel:

(A) May review the transcript only if he or she has the appropriate security clearances necessary to review any classified aspect of the transcript; and

(B) Should, to the extent possible, be the same counsel that was present for such classified testimony.

(3) Corrections.

(A) Pursuant to Rule XI of the House Rules, any corrections the witness desires to make in a transcript shall be limited to technical, grammatical, and typographical corrections.

(B) Corrections may not be made to change the substance of the testimony.

(C) Such corrections shall be submitted in writing to the Committee within 7 days

after the transcript is made available to the witnesses.

(D) Any questions arising with respect to such corrections shall be decided by the Chair.

(4) Copy for the Witness. At the request of the witness, any portion of the witness' testimony given in executive session shall be made available to that witness if that testimony is subsequently quoted or intended to be made part of a public record. Such testimony shall be made available to the witness at the witness' expense.

(i) Requests to Testify.

(1) Generally. The Committee will consider requests to testify on any matter or measure pending before the Committee.

(2) Recommendations for Additional Evidence. Any person who believes that testimony, other evidence, or commentary, presented at a public hearing may tend to affect adversely that person's reputation may submit to the Committee, in writing:

(A) A request to appear personally before the Committee;

(B) A sworn statement of facts relevant to the testimony, evidence, or commentary; or

(C) Proposed questions for the cross-examination of other witnesses.

(3) Committee Discretion. The Committee may take those actions it deems appropriate with respect to such requests.

(j) Contempt Procedures. Citations for contempt of Congress shall be forwarded to the House only if:

(1) Reasonable notice is provided to all members of the Committee of a meeting to be held to consider any such contempt recommendations;

(2) The Committee has met and considered the contempt allegations;

(3) The subject of the allegations was afforded an opportunity to state either in writing or in person, why he or she should not be held in contempt; and

(4) The Committee agreed by majority vote to forward the citation recommendations to the House.

(k) Release of Name of Witness.

(1) Generally. At the request of a witness scheduled to be heard by the Committee, the

name of that witness shall not be released publicly prior to, or after, the witness' appearance before the Committee.

(2) Exceptions. Notwithstanding paragraph (1), the Chair may authorize the release to the public of the name of any witness scheduled to appear before the Committee.

## 9. INVESTIGATIONS

(a) Commencing Investigations. The Committee shall conduct investigations only if approved by the Chair, in consultation with the Ranking Minority Member.

(b) Conducting Investigations. An authorized investigation may be conducted by members of the Committee or Committee Staff designated by the Chair, in consultation with the Ranking Minority Member, to undertake any such investigation.

## 10. SUBPOENAS

(a) Generally. All subpoenas shall be authorized by the Chair of the full Committee, upon consultation with the Ranking Minority Member, or by vote of the full Committee.

(b) Subpoena Contents. Any subpoena authorized by the Chair of the full Committee or by the full Committee may compel:

(1) The attendance of witnesses and testimony before the Committee; or

(2) The production of memoranda, documents, records, or any other tangible item.

(c) Signing of Subpoena. A subpoena authorized by the Chair of the full Committee or by the full Committee may be signed by the Chair or by any member of the Committee designated to do so by the full Committee.

(d) Subpoena Service. A subpoena authorized by the Chair of the full Committee, or by the full Committee, may be served by any person designated to do so by the Chair.

(e) Other Requirements. Each subpoena shall have attached thereto a copy of these rules.

## 11. COMMITTEE STAFF

(a) Definition. For the purpose of these rules, "Committee Staff" or "Staff of the Committee" means:

(1) Employees of the Committee;

(2) Consultants to the Committee;

(3) Employees of other Government agencies detailed to the Committee; or

(4) Any other person engaged by contract, or otherwise, to perform services for, or at the request of, the Committee.

(b) Appointment of Committee Staff and Security Requirements.

(1) Chair's Authority. Except as provided in paragraph (2), the Committee Staff shall be appointed, and may be removed, by the Chair and shall work under the general supervision and direction of the Chair.

(2) Staff Assistance to Minority Membership. Except as provided in paragraphs (3) and (4), and except as otherwise provided by Committee Rules, the Committee Staff provided to the Minority Party members of the Committee shall be appointed, and may be removed, by the Ranking Minority Member of the Committee, and shall work under the general supervision and direction of such member.

(3) Security Clearance Required. All offers of employment for prospective Committee Staff positions shall be contingent upon:

(A) The results of a background investigation; and

(B) A determination by the Chair that requirements for the appropriate security clearances have been met.

(4) Security Requirements. Notwithstanding paragraph (2), the Chair shall supervise and direct the Committee Staff with respect to the security and nondisclosure of classified information. Committee Staff shall comply with requirements necessary to ensure the security and nondisclosure of classified information as determined by the Chair in consultation with the Ranking Minority Member.

## 12. LIMIT ON DISCUSSION OF CLASSIFIED WORK OF THE COMMITTEE

(a) Prohibition.

(1) Generally. Except as otherwise provided by these rules and the Rules of the House of Representatives, members of the Committee and Committee Staff shall not at any time, either during that person's tenure as a member of the Committee or as Committee Staff, or anytime thereafter, discuss or disclose, or cause to be discussed or disclosed:

(A) The classified substance of the work of the Committee;

(B) Any information received by the Committee in executive session;

(C) Any classified information received by the Committee from any source; or

(D) The substance of any hearing that was closed to the public pursuant to these rules or the Rules of the House.

(2) Non-Disclosure in Proceedings.

(A) Members of the Committee and the Committee Staff shall not discuss either the substance or procedure of the work of the Committee with any person not a member of the Committee or the Committee Staff in connection with any proceeding, judicial or otherwise, either during the person's tenure as a member of the Committee, or of the Committee Staff, or at any time thereafter, except as directed by the Committee in accordance with the Rules of the House and these rules.

(B) In the event of the termination of the Committee, members and Committee

Staff shall be governed in these matters in a manner determined by the House concerning discussions of the classified work of the Committee.

(3) Exceptions.

(A) Notwithstanding the provisions of subsection (a)(1), members of the Committee and the Committee Staff may discuss and disclose those matters described in subsection (a)(1) with:

(i) Members and staff of the Senate Select Committee on Intelligence designated by the chair of that committee;

(ii) The chairmen and ranking minority members of the House and Senate Committees on Appropriations and staff of those committees designated by the chairmen of those committees; and,

(iii) The chair and ranking minority member of the Subcommittee on Defense of the House Committee on Appropriations and staff of that subcommittee as designated by the chair of that subcommittee, or Members of that subcommittee designated by the Chair pursuant to clause (g)(1) of Committee Rule 14.

(B) Notwithstanding the provisions of subsection (a)(1), members of the Committee and the Committee Staff may discuss and disclose only that budget-related information necessary to facilitate the enactment of the annual defense authorization bill with the chairmen and ranking minority members of the House and Senate Committees on Armed Services and the staff of those committees as designated by the chairmen of those committees.

(C) Notwithstanding the provisions of subsection (a)(1), members of the Committee and the Committee Staff may discuss with and disclose to the chair and ranking minority member of a subcommittee of the House Appropriations Committee with jurisdiction over an agency or program within the National Intelligence Program (NIP), and staff of that subcommittee as designated by the chair of that subcommittee, only that budget-related information necessary to facilitate the enactment of an appropriations bill within which is included an appropriation for an agency or program within the NIP.

(D) The Chair may, in consultation with the Ranking Minority Member, upon the written request to the Chair from the Inspector General of an element of the Intelligence Community, grant access to Committee transcripts or documents that are relevant to an investigation of an allegation of possible false testimony or other inappropriate conduct before the Committee, or that are otherwise relevant to the Inspector General's investigation.

(E) Upon the written request of the head of an Intelligence Community element, the Chair may, in consultation with the Ranking Minority Member, make available Committee briefing or hearing transcripts to that element for review by that element if a representative of that element testified, presented information to the Committee, or was present at the briefing or hearing the transcript of which is requested for review.

(F) Members and Committee Staff may discuss and disclose such matters as otherwise directed by the Committee.

(4) Records of Closed Proceedings. Any records or notes taken by any person memorializing material otherwise prohibited from disclosure by members of the Committee and Committee Staff under these rules, including information received in executive session and the substance of any hearing or briefing that was closed to the public, shall remain Committee material subject to these rules and may not be publicly discussed, disclosed, or caused to be publicly discussed or disclosed, unless authorized by the Committee consistent with these rules.

(b) Non-Disclosure Agreement.

(1) Generally. All Committee Staff must, before joining the Committee Staff, agree in writing, as a condition of employment, not to divulge or cause to be divulged any classified information which comes into such person's possession while a member of the Committee Staff, to any person not a member of the Committee or the Committee Staff, except as authorized by the Committee in accordance with the Rules of the House and these Rules.

(2) Other Requirements. In the event of the termination of the Committee, members and Committee Staff must follow any determination by the House of Representatives with respect to the protection of classified information received while a member of the Committee or as Committee Staff.

(3) Requests for Testimony of Staff.

(A) All Committee Staff must, as a condition of employment, agree in writing to notify the Committee immediately of any request for testimony received while a member of the Committee Staff, or at any time thereafter, concerning any classified information received by such person while a member of the Committee Staff.

(B) Committee Staff shall not disclose, in response to any such request for testimony, any such classified information, except as authorized by the Committee in accordance with the Rules of the House and these rules.

(C) In the event of the termination of the Committee, Committee Staff will be subject to any determination made by the House of Representatives with respect to any requests for testimony involving classified information received while a member of the Committee Staff.


13. CLASSIFIED MATERIAL

(a) Receipt of Classified Information.

(1) Generally. In the case of any information that has been classified under established security procedures and submitted to the Committee by any source, the Committee shall receive such classified information as executive session material.

(2) Staff Receipt of Classified Materials. For purposes of receiving classified information, the Committee Staff is authorized to accept information on behalf of the Committee.

(b) Non-Disclosure of Classified Information. Any classified information received by the

Committee, from any source, shall not be disclosed to any person not a member of the Committee or the Committee Staff, or otherwise released, except as authorized by the Committee in accordance with the Rules of the House and these rules.

(c) Exception for Non-Exclusive Materials.

> (1) Non-Exclusive Materials. Any materials provided to the Committee by the executive branch, if provided in whole or in part for the purpose of review by members who are not members of the Committee, shall be received or held by the Committee on a non-exclusive basis. Classified information provided to the Committee shall be considered to have been provided on an exclusive basis unless the executive branch provides a specific, written statement to the contrary.

> (2) Access for Non-Committee Members. In the case of materials received on a non-exclusive basis, the Chair, in consultation with the Ranking Minority Member, may grant non-Committee members access to such materials in accordance with the requirements of Rule 14(f)(4), notwithstanding paragraphs (1), (2), and (3) of Rule 14.

## 14. PROCEDURES RELATED TO HANDLING OF CLASSIFIED INFORMATION

(a) Security Measures.

> (1) Strict Security. The Committee's offices shall operate under strict security procedures administered by the Director of Security and Registry of the Committee under the direct supervision of the Staff Director.

> (2) U.S. Capitol Police Presence Required. At least one U.S. Capitol Police officer shall be on duty at all times outside the entrance to Committee offices to control entry of all persons to such offices.

> (3) Identification Required. Before entering the Committee's offices all persons shall identify themselves to the U.S. Capitol Police officer described in paragraph (2) and to a member of the Committee or Committee Staff.

> (4) Maintenance of Classified Materials. Classified documents shall be segregated and maintained in approved security storage locations.

> (5) Examination of Classified Materials. Classified documents in the Committee's possession shall be examined in an appropriately secure manner.

> (6) Prohibition on Removal of Classified Materials. Removal of any classified document from the Committee's offices is strictly prohibited, except as provided by these rules.

> (7) Exception. Notwithstanding the prohibition set forth in paragraph (6), a classified document, or copy thereof, may be removed from the Committee's offices in furtherance of official Committee business. Appropriate security procedures shall govern the handling of any classified documents removed from the Committee's offices.

(b) Access to Classified Information by Members. All members of the Committee shall at all times have access to all classified papers and other material received by the Committee from any source.

(c) Need-to-know.

> (1) Generally. Committee Staff shall have access to any classified information provided to the Committee on a strict "need-to-know" basis, as determined by the Committee, and under the Committee's direction by the Staff Director.

> (2) Appropriate Clearances Required. Committee Staff must have the appropriate clearances prior to any access to compartmented information.

(d) Oath.

> (1) Requirement. Before any member of the Committee, or the Committee Staff, shall have access to classified information, the following oath shall be executed:

> "I do solemnly swear (or affirm) that I will not disclose or cause to be disclosed any classified information received in the course of my service on the House Permanent Select Committee on Intelligence, except when authorized to do so by the Committee or the House of Representatives."

> (2) Copy. A copy of such executed oath shall be retained in the files of the Committee.

(e) Registry.

> (1) Generally. The Committee shall maintain a registry that:

>> (A) Provides a brief description of the content of all classified documents provided to the Committee by the executive branch that remain in the possession of the Committee; and

>> (B) Lists by number all such documents.

> (2) Designation by the Staff Director. The Staff Director shall designate a member of the Committee Staff to be responsible for the organization and daily maintenance of such registry.

> (3) Availability. Such registry shall be available to all members of the Committee and Committee Staff.

(f) Requests by Members of Other Committees. Pursuant to the Rules of the House, members who are not members of the Committee may be granted access to such classified transcripts, records, data, charts, or files of the Committee, and be admitted on a non-participatory basis to classified hearings of the Committee involving discussions of classified material in the following manner:

(1) Written Notification Required. Members who desire to examine classified materials in the possession of the Committee, or to attend Committee hearings or briefings on a non-participatory basis, must notify the Chief Clerk of the Committee in writing. Such notification shall state with specificity the justification for the request and the need for access.

(2) Committee Consideration. The Committee shall consider each such request by non-Committee members at the earliest practicable opportunity. The Committee shall determine, by record vote, what action it deems appropriate in light of all of the circumstances of each request. In its determination, the Committee shall consider:

> (A) The sensitivity to the national defense or the confidential conduct of the foreign relations of the United States of the information sought;

> (B) The likelihood of its being directly or indirectly disclosed;

> (C) The jurisdictional interest of the member making the request; and

> (D) Such other concerns, constitutional or otherwise, as may affect the public interest of the United States.

(3) Committee Action. After consideration of the member's request, the Committee may take any action it deems appropriate under the circumstances, including but not limited to:

> (A) Approving the request, in whole or part;

> (B) Denying the request;

> (C) Providing the requested information or material in a different form than that sought by the member; or

> (D) Making the requested information or material available to all members of the House.

(4) Chair and Ranking Member Consideration of Requests for Previously Granted Materials: If the Committee has granted a non-Committee member access to classified materials, the Chair and Ranking Member may jointly determine, in writing, what action they deem appropriate for subsequent requests for the same materials in the same Congress.

> (A) In their determination, the Chair and Ranking Member shall consider the factors described in paragraph (2) and may take any action they deem appropriate, including, but not limited to, the actions described in paragraph (3) and referring the request to the Committee for consideration.

> (B) If the Chair and Ranking Member are unable to reach a joint determination or if they refer a request to the Committee as described in subparagraph (A), the

Committee shall consider the request at the earliest practicable opportunity in the manner described in paragraphs (2) and (3).

(5) Requirements for Access by Non-Committee Members. Prior to a non-Committee member being given access to classified information pursuant to this subsection, the requesting member shall:

> (A) Provide the Committee a copy of the oath executed by such member pursuant to House Rule XXIII, clause 13; and

> (B) Agree in writing not to divulge any classified information provided to the member, pursuant to this subsection, to any person not a member of the Committee or the Committee Staff, except as otherwise authorized by the Committee in accordance with the Rules of the House and these rules.

(6) Consultation Authorized. When considering a member's request, the Committee may consult the Director of National Intelligence and such other officials it considers necessary.

(7) Finality of Committee Decision.

> (A) Should the member making such a request disagree with the determination by the Committee or the determination by the Chair and Ranking Member with respect to that request or any part thereof, that member must notify the Committee in writing of such disagreement.

> (B) The Committee shall subsequently consider the matter and decide, by record vote, what further action or recommendation, if any, the Committee will take.

(g) Admission of Designated Members of the Subcommittee on Defense of the Committee on Appropriations. Notwithstanding the provisions of subsection (f), the Chair may admit no more than three designated Members of the Subcommittee on Defense of the Committee on Appropriations to classified hearings and briefings of the Committee involving discussions of classified material. Such Members may also be granted access to classified transcripts, records, data, charts or files of the Committee incident to such attendance.

> (1) Designation. The Chair may designate three Members of the Subcommittee to be eligible for admission in consultation with the Ranking Minority Member, of whom not more than two may be from the same political party. Such designation shall be effective for the entire Congress.

> (2) Admission. The Chair may determine whether to admit designated Members at each hearing or briefing of the Committee involving discussions of classified material. If the Chair admits any of the designated Members to a particular hearing or briefing, all three of the designated Members shall be admitted to that hearing or briefing. Designated Members shall not be counted for quorum purposes and shall not have a vote in any meeting.

> (3) Requirements for Access. Prior to being given access to classified information pursuant

to this subsection, a designated Member shall:

(A) Provide the Committee a copy of the oath executed by such Member pursuant to House Rule XXIII, clause 13; and

(B) Agree in writing not to divulge any classified information provided to the Member pursuant to this subsection to any person not a Member of the Committee or a designated Member or authorized Staff of the Subcommittee on Defense of the Committee on Appropriations, except as otherwise authorized by the Committee in accordance with the Rules of the House and these rules.

(h) Admission of the Chair and Ranking Member of the Committee on Armed Services. Notwithstanding the provisions of subsection (f), the Chair may admit the Chair and Ranking Member of the Committee on Armed Services to classified hearings and briefings of the Committee involving discussions of budget-related classified information necessary to facilitate the enactment of the annual defense authorization bill. Such members may also be granted access to classified transcripts, records, data, charts or files of the Committee incident to such attendance.

(1) Admission. The Chair may determine whether to admit the Chair and Ranking Member of the Committee on Armed Services at each hearing or briefing of the Committee. If the Chair admits either the Chair or Ranking Member of the Committee on Armed Services, both the Chair and Ranking Member shall be admitted to that hearing or briefing. The Chair and Ranking Member of the Committee on Armed Services shall not be counted for quorum purposes and shall not have a vote in any meeting.

(2) Requirements for Access. Prior to being given access to classified information pursuant to this subsection, the Chair and Ranking Member of the Committee on Armed Services shall:

(A) Provide the Committee a copy of the oath executed by such member pursuant to House Rule XXIII, clause 13; and

(B) Agree in writing not to divulge any classified or executive session information provided to the member pursuant to this subsection to any person not a member of the Committee or authorized staff of the Committee on Armed Services except as otherwise authorized by the Committee in accordance with the Rules of the House and these rules.

(i) Advising the House or Other Committees. Pursuant to Section 501 of the National Security Act of 1947 (50 U.S.C. 413), and to the Rules of the House, the Committee shall call to the attention of the House, or to any other appropriate committee of the House, those matters requiring the attention of the House, or such other committee, on the basis of the following provisions:

(1) By Request of Committee Member. At the request of any member of the Committee to call to the attention of the House, or any other committee, executive session material in the Committee's possession, the Committee shall meet at the earliest practicable opportunity

to consider that request.

(2) Committee Consideration of Request. The Committee shall consider the following factors, among any others it deems appropriate:

> (A) The effect of the matter in question on the national defense or the foreign relations of the United States;

> (B) Whether the matter in question involves sensitive intelligence sources and methods;

> (C) Whether the matter in question otherwise raises questions affecting the national interest; and

> (D) Whether the matter in question affects matters within the jurisdiction of another Committee of the House.

(3) Views of Other Committees. In examining such factors, the Committee may seek the opinion of members of the Committee appointed from standing committees of the House with jurisdiction over the matter in question, or submissions from such other committees.

(4) Other Advice. The Committee may, during its deliberations on such requests, seek the advice of any executive branch official.

(j)   Reasonable Opportunity to Examine Materials. Before the Committee makes any decision regarding any request for access to any classified information in its possession, or a proposal to bring any matter to the attention of the House or another committee, members of the Committee shall have a reasonable opportunity to examine all pertinent testimony, documents, or other materials in the Committee's possession that may inform their decision on the question.

(k)   Notification to the House. The Committee may bring a matter to the attention of the House when, after consideration of the factors set forth in this rule, it considers the matter in question so grave that it requires the attention of all members of the House, and time is of the essence, or for any reason the Committee finds compelling.

(*l*)   Method of Disclosure to the House.

> (1) Should the Committee decide by record vote that a matter requires the attention of the House as described in subsection (i), it shall make arrangements to notify the House promptly.

> (2) In such cases, the Committee shall consider whether:

>> (A) To request an immediate secret session of the House (with time equally divided between the Majority and the Minority); or

(B) To publicly disclose the matter in question pursuant to clause 11(g) of House Rule X.

(m)  Requirement to Protect Sources and Methods. In bringing a matter to the attention of the House, or another committee, the Committee, with due regard for the protection of intelligence sources and methods, shall take all necessary steps to safeguard materials or information relating to the matter in question.

(n)  Availability of Information to Other Committees. The Committee, having determined that a matter shall be brought to the attention of another committee, shall ensure that such matter, including all classified information related to that matter, is promptly made available to the chair and ranking minority member of such other committee.

(o)  Provision of Materials. The Director of Security and Registry for the Committee shall provide a copy of these rules, and the applicable portions of the Rules of the House of Representatives governing the handling of classified information, along with those materials determined by the Committee to be made available to such other committee of the House or non-Committee member.

(p)  Ensuring Clearances and Secure Storage. The Director of Security and Registry shall ensure that such other committee or non-Committee member receiving such classified materials may properly store classified materials in a manner consistent with all governing rules, regulations, policies, procedures, and statutes.

(q)  Log. The Director of Security and Registry for the Committee shall maintain a written record identifying the particular classified document or material provided to such other committee or non-Committee member, the reasons agreed upon by the Committee for approving such transmission, and the name of the committee or non-Committee member receiving such document or material.

(r)  Miscellaneous Requirements.

(1) Staff Director's Additional Authority. The Staff Director is further empowered to provide for such additional measures, which he or she deems necessary, to protect such classified information authorized by the Committee to be provided to such other committee or non-Committee member.

(2) Notice to Originating Agency. In the event that the Committee authorizes the disclosure of classified information provided to the Committee by an agency of the executive branch to a non-Committee member or to another committee, the Chair may notify the providing agency of the Committee's action prior to the transmission of such classified information.

## 15. LEGISLATIVE CALENDAR

(a) Generally. The Chief Clerk, under the direction of the Staff Director, shall maintain a printed calendar that lists:

(1) The legislative measures introduced and referred to the Committee;

(2) The status of such measures; and

(3) Such other matters that the Committee may require.

(b) Revisions to the Calendar. The calendar shall be revised from time to time to show pertinent changes.

(c) Availability. A copy of each such revision shall be furnished to each member, upon request.

(d) Consultation with Appropriate Government Entities. Unless otherwise directed by the Committee, legislative measures referred to the Committee may be referred by the Chief Clerk to the appropriate department or agency of the Government for reports thereon.

## 16. COMMITTEE WEBSITE

The Chair shall maintain an official Committee web site for the purpose of furthering the Committee's legislative and oversight responsibilities, including communicating information about the Committee's activities to Committee members and other members of the House.

## 17. MOTIONS TO GO TO CONFERENCE

In accordance with clause 2(a) of House Rule XI, the Chair is authorized and directed to offer a privileged motion to go to conference under clause 1 of House Rule XXII whenever the Chair considers it appropriate.

## 18. COMMITTEE TRAVEL

(a) Authority. The Chair may authorize members and Committee Staff to travel on Committee business.

(b) Requests.

(1) Member Requests. Members requesting authorization for such travel shall state the purpose and length of the trip, and shall submit such request directly to the Chair.

(2) Committee Staff Requests. Committee Staff requesting authorization for such travel shall state the purpose and length of the trip, and shall submit such request through their supervisors to the Staff Director and the Chair.

(c) Notification to Members.

(1) Generally. Members shall be notified of all foreign travel of Committee Staff not accompanying a member.

(2) Content. All members are to be advised, prior to the commencement of such travel, of its length, nature, and purpose.

(d) Trip Reports.

(1) Generally. A full report of all issues discussed during any travel shall be submitted to the Chief Clerk of the Committee within a reasonable period of time following the completion of such trip.

(2) Availability of Reports. Such report shall be:

    (A) Available for review by any member or appropriately cleared Committee Staff; and

    (B) Considered executive session material for purposes of these rules.

(e) Limitations on Travel.

    (1) Generally. The Chair is not authorized to permit travel on Committee business of Committee Staff who have not satisfied the requirements of subsection (d) of this rule.

    (2) Exception. The Chair may authorize Committee Staff to travel on Committee business, notwithstanding the requirements of subsections (d) and (e) of this rule,

        (A) At the specific request of a member of the Committee; or

        (B) In the event there are circumstances beyond the control of the Committee Staff hindering compliance with such requirements.

(f) Definitions. For purposes of this rule the term "reasonable period of time" means:

    (1) No later than 60 days after returning from a foreign trip; and

    (2) No later than 30 days after returning from a domestic trip.


## 19. DISCIPLINARY ACTIONS

(a) Generally. The Committee shall immediately consider whether disciplinary action shall be taken in the case of any member of the Committee Staff alleged to have failed to conform to any rule of the House of Representatives or to these rules.

(b) Exception. In the event the House of Representatives is:

    (1) In a recess period in excess of 3 days; or

    (2) Has adjourned sine die; the Chair of the full Committee, in consultation with the Ranking Minority Member, may take such immediate disciplinary actions deemed necessary.

(c) Available Actions. Such disciplinary action may include immediate dismissal from the Committee Staff.

(d) Notice to Members. All members shall be notified as soon as practicable, either by facsimile transmission or regular mail, of any disciplinary action taken by the Chair pursuant to subsection (b).

(e) Reconsideration of Chair's Actions. A majority of the members of the full Committee may vote to overturn the decision of the Chair to take disciplinary action pursuant to subsection (b).


## 20. BROADCASTING COMMITTEE MEETINGS

Whenever any hearing or meeting conducted by the Committee is open to the public, a majority of the Committee may permit that hearing or meeting to be covered, in whole or in part, by television broadcast, radio broadcast, and still photography, or by any of such methods of coverage, subject

to the provisions and in accordance with the spirit of the purposes enumerated in the Rules of the House.

## 21. COMMITTEE RECORDS TRANSFERRED TO THE NATIONAL ARCHIVES

(a) Generally. The records of the Committee at the National Archives and Records Administration shall be made available for public use in accordance with the Rules of the House of Representatives.

(b) Notice of Withholding. The Chair shall notify the Ranking Minority Member of any decision, pursuant to the Rules of the House of Representatives, to withhold a record otherwise available, and the matter shall be presented to the full Committee for a determination of the question of public availability on the written request of any member of the Committee.

## 22. CHANGES IN RULES

(a) Generally. These rules may be modified, amended, or repealed by vote of the full Committee.

(b) Notice of Proposed Changes. A notice, in writing, of the proposed change shall be given to each member at least 48 hours prior to any meeting at which action on the proposed rule change is to be taken.

EXHIBIT C

**Subject:** Re: Judicial relief re bank supoena - Request for Meet and Confer
**Date:** Thursday, October 19, 2017 at 10:57:59 PM Eastern Daylight Time
**From:** Patel, Kash
**To:** Rachel Clattenburg
**CC:** Josh Levy, Stewart, Mark, William W. Taylor, Glabe, Scott

All,

Thanks for the call this evening. After due consideration, the House Permanent Select Committee on Intelligence is declining your request for an extension. Appreciate your time.

Regards,
Kash

Kashyap P. Patel
Senior Counsel for Counterterrorism
House Permanent Select Committee on Intelligence

Desk: 202-226-5515
Cell: 202-360-3838

On Oct 19, 2017, at 20:17, Rachel Clattenburg <rmc@cunninghamlevy.com> wrote:

> All,
>
> The dial-in info for the 8:30 call is:
>
> Dial in: 800.784.0491
> Passcode: 2027781810
>
> Thanks,
> Rachel
>
> **From:** "Patel, Kash" <Kash.Patel@mail.house.gov>
> **Date:** Thursday, October 19, 2017 at 8:01 PM
> **To:** Josh Levy <jal@cunninghamlevy.com>
> **Cc:** Rachel Clattenburg <rmc@cunninghamlevy.com>, "Stewart, Mark" <Mark.Stewart@mail.house.gov>, "William W. Taylor" <wtaylor@zuckerman.com>, "Glabe, Scott" <Scott.Glabe@mail.house.gov>
> **Subject:** Re: Judicial relief re bank supoena - Request for Meet and Confer
>
> Josh,
>
> Thanks for reaching out.
> Per your request, we are available for a call at 830 this evening. Please circulate a dial and we will join the call. Thanks.
>
> Regards,

Kashyap P. Patel
Senior Counsel for Counterterrorism
House Permanent Select Committee on Intelligence

Desk: 202-226-5515
Cell: 202-360-3838

On Oct 19, 2017, at 19:03, Josh Levy <jal@cunninghamlevy.com> wrote:

Kash and Mark:

Counsel for our clients' bank has notified us that the bank has received a subpoena from Mr. Nunes for our clients' bank records and intends to comply with the subpoena, which due date we understand to be 9am on October 23, 2017. We therefore have no choice but to seek judicial relief tomorrow morning. We would like to speak with you and Mr. Conaway tonight in an effort to resolve the matter outside of court. Please let us know if you and Mr. Conaway can speak tonight. We are free for a call after 745pm.

I am copying our co-counsel Bill Taylor on this email. He also represents our clients and will be on the call.

Thank you.

Sincerely,

Josh

**Joshua A. Levy**
**Cunningham Levy Muse LLP**
1250 Connecticut Avenue, NW, Suite 200
Washington, DC 20036
202.261.6564 (w)
202.360.0677 (m)
jal@cunninghamlevy.com
cunninghamlevy.com

\*\*\*

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee.  It is the property of Cunningham Levy LLP. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by reply or by telephone at (202) 261-6564, and immediately destroy this communication and all copies thereof, including all attachments.

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.
\*\*\*