# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BEAN LLC d/b/a FUSION GPS, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action 17-cv-2187-TSC |
| DEFENDANT BANK, ) | |
| Defendant, ) | |
| and ) | |
| PERMANENT SELECT COMMITTEE ON INTELLIGENCE OF THE U.S. HOUSE OF REPRESENTATIVES, ) | |
| Defendant-Intervenor. ) | |

## DECLARATION OF JOSHUA A. LEVY IN SUPPORT OF PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS UNOPPOSED EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Joshua A. Levy, declare as follows:

1. I am counsel for Plaintiff Bean LLC d/b/a Fusion GPS, and I am a partner at the law firm of Cunningham Levy Muse LLP. I make this Declaration in support of Plaintiff's Reply in Support of its Unopposed Emergency Application for Temporary Restraining Order and Preliminary Injunction. I make it principally in response to Intervenor's allegations that (a) "this action is wholly the result of the gamesmanship and recalcitrance of Plaintiff in refusing to cooperate with the Committee's investigation," Opp. 1, and that Plaintiff is therefore not entitled to relief against a subpoena which violates its rights under constitutional and statutory principles,

and (b) compliance with the subpoena would be a "disclosure … limited to the Committee and its staff." *Id.* at 39.

2. Other committees of the Congress are conducting investigations parallel to the one Congressman Nunes purports to pursue. Fusion has cooperated with these parallel congressional investigations.

   a. On August 3, 2017, the Chair and Ranking Member of the Senate Judiciary Committee agreed with Glenn Simpson, a co-founder of Fusion GPS, on terms for a voluntary transcribed interview by that Committee as part of its investigation into Russia's interference in the 2016 U.S. presidential election. *See* Letter from Sen. Charles E. Grassley and Sen. Dianne Feinstein to Glenn Simpson, Aug. 3, 2017, attached at Exhibit A.

   b. On August 22, 2017, pursuant to the foregoing agreement, Mr. Simpson participated in a 10-hour voluntary interview conducted by the staff of the Senate Judiciary Committee.

   c. Plaintiff is working in good faith to cooperate with the Senate Select Committee on Intelligence ("SSCI"), which is also investigating Russia's interference in the 2016 U.S. presidential election.

3. On August 18, 2017, I received a letter from Congressmen Conaway and Schiff, on behalf of Intervenor in this case, House Permanent Subcommittee on Intelligence ("HPSCI") asking Plaintiff to preserve and voluntarily produce documents "that reasonably could lead to the discovery of any facts within the investigation's publicly-announced parameters." Nothing in the letter or attached to it defined "the investigation's publicly-announced parameters." *See* Letter from Messrs. Conaway & Schiff, Aug. 18, 2017, at 1, at Exhibit B. I asked HPSCI staff to

2

discuss the letter in September, and staff agreed. On September 20, 2017, in response to our request, HPSCI staff emailed a one-page memo setting forth "the investigation's publicly-announced parameters." *See* e-mail from K. Patel to J. Levy, Sept. 20, 2017, attached at Exhibit C.

4. Once we received the "parameters" of the investigation, we corresponded and held phone calls with HPSCI staff, in an effort to facilitate cooperation. The chronology of this correspondence with HPSCI, over the course of a mere 13-day period, and its contents (including memoranda in support of privileges Plaintiff would assert) are set forth in an October 16, 2017, letter. *See* Letter from Joshua A. Levy to Chairman Devin Nunes, Oct. 16, 2017, attached at Exhibit F. The information contained within that letter is true and correct.

5. At the end of this 13-day period, HPSCI staff finally granted our request for an in-person meeting. On October 3, 2017, Rachel Clattenburg and I met with HPSCI majority and minority staff to discuss a path toward voluntary cooperation. At this meeting, HPSCI staff did not request Plaintiff to produce documents and certainly did not request it to produce bank records. This meeting focused on HPSCI staff's request to interview Plaintiff members Thomas Catan, Peter Fritsch and Glenn Simpson. We proposed conditions that other congressional committees have been amendable to and have accepted in order to facilitate cooperation, striking the balance between Congress' right to information and the protection of our clients' privileges and legal obligations. For example, we asked to limit the scope of the interviews from the "parameters" to something more identifiable.

6. But rather than working with Plaintiff on voluntary cooperation, Mr. Nunes – on the very next day - signed and issued three subpoenas for documents and deposition testimony to Plaintiff members Thomas Catan, Peter Fritsch and Glenn Simpson. *See* Subpoenas, attached at Exhibit

D**.** Despite the ambiguous language within them, these subpoenas sought five categories of documents and marked the first time that anyone from HPSCI had sought anything remotely specific from Plaintiff.

7. On the morning of October 13, 2017, I received an e-mail from Matt Mosk at ABC News asking me whether a "House subpoena" had been served on a bank for Plaintiff's records. *See* e-mail from M. Mosk to J. Levy, Oct. 13, 2017, attached at Exhibit E**.** Later that day, counsel for Defendant Bank ("the bank") confirmed to me that Congressman Devin Nunes had, on October 4, 2017, issued a subpoena to Plaintiff's bank demanding all of its banking records from August 2015 through the present (hereinafter "the bank subpoena"). I informed bank counsel of the press inquiry and assured bank counsel that neither Plaintiff nor Plaintiff's counsel provided this information to the press. Bank counsel informed me that neither the bank nor any of its representatives, including but not limited to bank counsel, was the source of the leak. Mr. Mosk's source could only have come from the Committee or its staff.

8. On October 16, 2017, we timely responded to the subpoenas for documents issued to Messrs. Fritsch and Catan, through a 17-page letter, in which we, *inter alia*, informed Mr. Nunes that our clients would be invoking their constitutional privileges not to testify. *See* Letter from Joshua A. Levy to Chairman Devin Nunes, Oct. 16, 2017, attached at Exhibit F**.**

9. On October 17, 2017, I informed staff, *via* e-mail, that our clients would be invoking their constitutional privileges under the First and Fifth Amendments not to testify and thus asked staff if our clients could be excused from testifying. Staff refused that request and required their appearance. *See* e-mail from N. Ciarlante to J. Levy, Oct. 17, 2017, attached at Exhibit G.

10. On October 18, 2017, Messrs. Fritsch and Catan appeared for their depositions and, under oath, clearly and unequivocally invoked their privileges under both the First and Fifth

Amendments not to testify. At the depositions, HPSCI staff stated that no one should disclose what was said during the deposition to anyone else.

11. On October 19, 2017, the *Wall Street Journal* published a column written by Kimberley A. Strassel. Kimberley A. Strassel, "The Fusion Collusion," WALL ST. J., Oct. 19, 2017, attached as Exhibit H. Ms. Strassel has never spoken or otherwise communicated with me. In an effort to criticize the alleged conduct of minority staff at the deposition, Ms. Strassel revealed some of what occurred during the otherwise confidential October 18, 2017, depositions of Messrs. Fritsch and Catan. Neither Mr. Fritsch, Mr. Catan, Ms. Clattenburg, nor I was the source of that information. Any reasonable person reading this column can only conclude that HPSCI majority staff or members leaked this confidential information to Ms. Strassel.

12. As the Court is aware, Plaintiff sought leave in this action to refer to its bank by a pseudonym. *See* ECF No. 3 (Unopposed Motion for Defendant to Proceed Under a Pseudonym). The purpose of this request was to avoid, to the extent possible, identification of the bank where Plaintiff had its accounts. Before the Court could rule on the motion, HPSCI leaked the identification of the bank to the press. On October 19, 2017, in the hours between the time when Plaintiff delivered the pleadings in this case to committee staff (which did not name the bank) and the Court granted the motion to file under a pseudonym, a columnist at the Washington Examiner published a story naming the bank. *See* Byron York, "Byron York: In dossier probe, Fusion GPS asks court to stop House from seeing bank records," Oct. 20, 2017, THE WASHINGTON EXAMINER, available at http://www.washingtonexaminer.com/byron-york-in-dossier-probe-fusion-gps-asks-court-to-stop-house-from-seeing-bank-records/article/2638187.

13. Plaintiff, Plaintiff's counsel, Defendant Bank, and counsel for Defendant Bank were not the source of that leak. The only other persons who knew the identity of the bank were committee staff, Mr. Nunes and possibly other committee members.

14. Irreparable harm from disclosure of its bank records to Congressman Nunes and his staff is aggravated by the likelihood that the committee and its staff will not maintain their confidentiality.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   October 23, 2017

                                              Joshua A. Levy