## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
BEAN LLC d/b/a FUSION GPS                            )
                                                    )
              Plaintiff,                             )
                                                    )
       v.                                            )
                                                    )          Civil Action 1:17-cv-2187-RJL
DEFENDANT BANK,                                      )
                                                    )
              Defendant,                             )
                                                    )
              and                                    )
                                                    )
PERMANENT SELECT COMMITTEE                           )
ON INTELLIGENCE OF THE U.S.                          )
HOUSE OF REPRESENTATIVES,                            )
                                                    )
              Defendant/Intervenor.                  )
_____

### DECLARATION OF STEPHEN A. SALTZBURG

Pursuant to 28 U.S.C. § 1746, I Stephen A. Saltzburg, hereby declare under penalty of perjury that the following statements are true to the best of my knowledge and belief:

### I. PERSONAL INFORMATION

1.      I am the Wallace and Beverley Woodbury University Professor at The George Washington University in Washington, D.C.  "University Professor" is the highest rank that George Washington University bestows.  It is a title held by approximately a dozen faculty members at this time.   Prior to becoming the Woodbury University Professor in 2004, I was the Howrey Professor of Trial Advocacy, Litigation and Professional Responsibility at the George Washington University from 1990 to 2004.  My resume is attached as an Exhibit to this Declaration.

2.      My teaching includes incorporating professional responsibility issues into a number of courses. I also co-taught the basic course in Professional Responsibility at The George Washington University Law School.

3.      I am the Director of the National Trial Advocacy College at the University of Virginia Law School, and have held the position as Director or Co-Director for 36 years.[1] For 34 years, I taught a two-hour professional ethics segment in the Trial Advocacy College.[2]  For many years I co-chaired the ALI-ABA annual program in Trial Evidence in Federal and State Courts, and actively participated in and helped to design the ethics segment of that program.

4.      In 1987-1988, I served as Associate Independent Counsel in the Iran-Contra Investigation.  In 1988-1989, I served as Deputy Attorney General in the Criminal Division of the Department of Justice.  In 1989-1990, I was the Attorney General's ex officio representative on the United States Sentencing Commission.  In 1994-1995, I was appointed by the Secretary of Treasury to be the first and only Director of the Tax Refund Fraud Task Force.

5.      The Chief Justice of the United States appointed me Reporter for the Advisory Committee on the Federal Rules of Criminal Procedure, a position in which I served from 1984-1989.  I resigned when I was working in the Department of Justice, and when I left

---

[1]    Before coming to the George Washington University in 1990, I held the Class of 1962 Endowed Chair at the University of Virginia Law School where I started teaching in 1972.

[2]    I also teach courses for lawyers.  For example, I co-taught a seminar on depositions for the Virginia Trial Lawyers Association on May 3, 2007 in Fairfax County, VA, which included a section on "Ethical and Effective Witness Preparation."  In June 2014 and in June 2016 I lectured on professional ethics to the annual ABA Aviation Law Section.  I am scheduled to do so again March 2018.

the Department the Chief Justice appointed me as a member of the Advisory Committee, and I served in that capacity from 1990 to 1995.

6.     In the past I have been asked by law firms and individual lawyers to advise them on issues related to professional standards governing lawyers.  I have done so for large and small firms.  I have also developed and offered in-house training on professional responsibility for lawyers.

7.     I have testified as an expert both for and against lawyers on professional responsibility issues.

## II. RETENTION IN THIS CASE

8.     I was asked by the law firm, Zuckerman Spaeder, and specifically by Steven M. Salky, Esq. to offer an opinion in response to the Intervenor's repeated statements that "Fusion GPS has established a pattern and practice of using law firms as intermediaries to mask the true beneficiaries of its research,"[3] and specifically to opine on the accuracy of Plaintiff's statement in response that "[l]aw firms, on behalf of their clients, contract with third parties on a confidential basis, during ongoing litigation and in situations in which litigation is reasonably foreseeable" and "[s]uch work occurs every day, all over the country."[4]

## III. MY OPINION

9.     My opinion is as follows: (1) The statements that "[l]aw firms, on behalf of their clients, contract with third parties on a confidential basis, during ongoing litigation

---

[3]   Doc. 35-2, Exhibit B to Notice of Filing Redacted Versions of Documents.

[4]   Doc. 23-1, Memorandum of Points and Authorities in Support of Plaintiffs' Renewed Application for Temporary Restraining Order and Motion for Preliminary Injunction, at 9.

and in situations in which litigation is reasonably foreseeable" and "[s]uch work occurs every day, all over the country" are accurate descriptions of what lawyers and law firms throughout the United States do on a regular basis.  (2) Law firms or lawyers commonly hire third parties to assist them in investigating matters on behalf of their clients; they typically prefer to retain these third parties themselves rather than have clients retain them; and they do so for good reasons that have nothing to do with third parties "using law firms or lawyers as intermediaries to mask the true beneficiaries of [their] research."  In the paragraphs below, I explain my opinion.

## IV. REASONS SUPPORTING THE OPINION

10.     The first reason why lawyers and law firms prefer to retain third parties to assist in investigations on behalf of clients (and the most common and important reason) is that in many cases lawyers and law firms can share otherwise privileged information with the third parties they retain so that they make the third parties part of the legal team and preserve attorney-client privilege.

11.     One early case upholding such a practice as legitimate is *United States v. Kovel*, 296 F.3d 918 (2d Cir. 1961) (using an accountant to assist a lawyer in providing legal services).  It is widely cited by other courts and has been applied to third parties other than accountants.

12.     The United States Court of Appeals for the District of Columbia Circuit has followed *Kovel.  See. e.g.*, *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980)("[a] line of appellate cases beginning with Judge Friendly's opinion for the court in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), has recognized that the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the

4

client where the purpose of the report was to put in usable form information obtained from the client").

13.     If the client hires an investigator there is no privilege protecting the communications from the client to the investigator.  *See*, *e.g.*, *Cavallaro v. United* States, 284 F.3d 236, 241 (1st Cir. 2001) (no privilege where client hired accounting firm to provide tax advice, not to assist lawyer in providing legal advice); *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir. 1995) (same). There is, therefore, good reason for a lawyer or a law firm to hire the third party and to bring that third party under the umbrella of attorney-client privilege.

14.     The reality of law practice today is that lawyers and law firms do not possess expertise in every subject that might be relevant to representation of a client.  They frequently need the help of third parties who possess the expertise that the lawyers lack. One writer described this reality well:

> In today's sophisticated and evolving financial world, which includes complex tax laws and regulations, it is extremely challenging for an attorney to maintain proficiency in his or her specific areas of legal expertise and also acquire competency in economics and accounting. The highly skilled criminal defense attorney may know his or her way around the courtroom, have a firm command of the rules of evidence, and be able to determine what a juror had for lunch based on the juror's facial expression. However, does the defense attorney know the timing and character of certain types of income described in Title 26 of the U.S. Code? Can the attorney accurately determine the tax loss associated with a tax evasion count in a federal indictment?

> Just as an attorney who does not speak Spanish would rely on an interpreter in advising his Spanish-speaking client with respect to criminal law procedures, an attorney should rely on an accountant to interpret complex and complicated tax concepts to properly dole out legal advice to his client charged with a financial or tax crime. However, using an accountant properly in defending a client in a criminal matter requires a strategy and knowledge of the parameters of the attorney-client privilege.

Martin A. Schainbaum, *Cover Story: The Scope and Limitations of the Kovel Accountant*, 40 Champion 26 (2016).  The same rationale applies to third parties other than accountants.

15.     A couple of examples from my own experience illustrate how sharing of information might occur.   I have had an investigator participate in interviewing a client. The investigator might have much greater expertise than I in the subject matter of a representation and might help me assure that I am able to elicit complete information from a client.  In addition, I can share with the investigator things a client has told me so that the investigator is in a position to determine whether the client's information can be verified. In these circumstances, I make clear that the investigator is working for me as part of the legal team, and the investigator assists me just as associates, paralegals and secretaries in a firm assist lawyers.

16.     Second, a desire to rely on the work product doctrine explains why lawyers or law firms want to rely on the expertise of third parties in representing their clients and take pains to make the third parties part of the legal team.  The attorney-work product doctrine has its roots in the Supreme Court's decision in *Hickman v.* Taylor, 329 U.S. 495 (1947).  The Court reasoned that "[w]e . . . agree that the memoranda, statements and mental impressions in issue in this case fall outside the scope of the attorney-client privilege and hence are not protected from discovery on that basis"; "[b]ut the impropriety of invoking that privilege does not provide an answer to the problem before us"; "[h]ere is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties" and "[a]s such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution

and defense of legal claims."[5]  The Court added that '[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."[6]

Fed. R. Civ. P. 26 (b)(3) expands work product protection to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Even though the rule protects not only work done by lawyers and extends to third parties who are representatives of a client, there is a work product advantage to having the lawyer or law firm hire the third party.  The rule provides that "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  On its face the rule would seem to treat third parties investigators hired by clients the same as investigators hired by lawyers or law firms.  But, the Supreme Court in *Hickman*, *supra* at 508-510, and later in *Upjohn Co. v. United States*, 449 U.S. 383, 401-401 (1981), hinted that the mental impressions of attorneys (as opposed to others) as reflected in notes and memoranda might never be discoverable.  Thus lawyers and law firms assure that they receive the maximum work product protection when they hire third parties in anticipation of litigation and are responsible for the strategies pursued by the third parties.  *See also United States v. Adlman*, 68 F.3d 1495, 1501-1502 (2d Cir. 1995).

---

[5]  329 U.S. at 508-509.

[6]  *Id*. at 510.

17.     Third, a lawyer or law firm hiring a third party can and should direct how the third party will proceed to do an investigation.  This protects the client from being liable for hiring an investigator who engages in conduct that might expose the client to some form of liability or that might embarrass the client.  This does not mean that a lawyer or law firm must micromanage the third party. Often the lawyer or law firm will merely provide some guidance as to how the third party should proceed.

18.     Fourth, a lawyer or law firm hiring a third party to investigate is much better able than the client to assess whether evidence discovered by the third party is likely to be admissible or useful even if not admissible.  The lawyer also can direct the third party as to the best ways to document information so that it can be presented in a form most useful to the client.

19.     Fifth, a lawyer or law firm might conclude that more than one type of expertise would assist the legal team in representing a client.  By bringing more than one expert under the umbrella of attorney-client privilege and attorney work product, the lawyer or law firm enables the experts to speak as part of the legal team and to exchange information that might not be protected were the lawyer or law firm not in charge of the team.

## IV.     CONCLUSION

20.     The reasons stated in paragraphs 10 thru 19, *supra*, explain the opinions I offer in paragraph 9, *supra*.  My opinion and reasons describe why prudent lawyers and law firms throughout the country routinely hire third parties, including investigators, to assist

them in representing clients.  I offer no opinion as to the specific motives of any individual

law firm or lawyer.


Date:   November 27, 2017                    /s/Stephen A. Saltzburg

# EXHIBIT
# RESUME OF STEPHEN A. SALTZBURG

**RESUME**
**STEPHEN ALLAN SALTZBURG**
**WALLACE AND BEVERLEY WOODBURY UNIVERSITY PROFESSOR**

**HOME ADDRESS**



**WORK ADDRESS**
George Washington University Law

2000 H Street, N.W.
Washington, D.C.  20052
202) 994-7089, Fax (202) 994-7143
E-Mail: ssaltz@law.gwu.edu

**PRESENT TEACHING POSITIONS**
Wallace and Beverley Woodbury University Professor of Law, George Washington University
Director, National Trial Advocacy College at the University of Virginia

**FORMER TEACHING POSITIONS**
Howrey Professor of Trial Advocacy, Litigation and Professional  Responsibility, George Washington University Law School, 1990-2004
University of Virginia School of Law, 1972-1990, Class of 1962 Chairholder, 1987-1990

**SUBJECTS TAUGHT**
Civil Procedure, Constitutional Law, Criminal Law, Criminal Procedure, Evidence, Trial
        Advocacy

**EDUCATION**
A.B., Dickinson College, 1967; J.D., University of Pennsylvania, 1970

**CLERKSHIPS**
Honorable Stanley A. Weigel, (ND/CAL), 1970 - 71
Honorable Thurgood Marshall, 1971 - 72

**GOVERNMENT SERVICE**
        **Executive**
Director, Tax Refund Fraud Task Force, U.S. Treasury Department, 1994 - 1995
U.S. Department of Defense Code Committee, 1989 - 1992
Ex Officio Member, U.S. Sentencing Commission, 1989 - 1990
Deputy Assistant Attorney General, Criminal Division, 1988 - 1989
Associate Counsel, Office of Independent Counsel, 1987 - 1988
Member, Military Justice Act of 1983 Commission, 1984-1985
        **Judiciary**
Mediator, United States Court of Appeals for the District of  Columbia Appellate Mediation Program, 1992 - Present

ABA Criminal Justice Section Liaison to Federal Rules of Evidence Committee, 2012 -
Special Master, Yaz and Yasmin MDL, S.D. Ill., 2011-
ABA Liaison to Federal Rules of Evidence Restyling Committee, 2010-2012
Special Master, Seroquel MDL, U.S. District Court for the Middle District of Florida,
        2009-2011
Special Master, The Diversified Group, Inc. v. Paul Daugerdas, U.S. District Court for
        the Southern District of New York (attorney-client and work product issues),
        2003
Co-Chair, Third Circuit Task Force on Selection of Class Counsel, 2001-2002
Special Master, Hartman v. Powell, U.S. District Court for the District of Columbia
(class
        action employment case), 1991 - 2000
Special Master, Hammon v. Barry, U.S. District Court for the District of Columbia
        (class action employment case), 1990 - 1994
Mediator, Cobell v. Babbitt, U.S. District Court for the District of Columbia, 1999
Chair, U.S. District Court for the District of Columbia Civil Justice Reform Act
        Advisory Group, 1994 – 1999
Member, Advisory Committee on Federal Rules of Criminal Procedure, 1990 - 1995
Liaison Member from Advisory Committee on Federal Rules of Criminal Procedure
        to Advisory Committee on Federal Rules of Evidence, 1993- 1995
Reporter, U.S. District Court for the District of Columbia Civil  Justice Reform Act
        Advisory Group, 1991- 1993
Reporter, Advisory Committee on Federal Rules of Criminal Procedure, 1984 - 89
Co-Chairman and Reporter of the Virginia Supreme Court's Advisory Committee on
        Rules of Evidence, 1984 - 1985

## MEDIATION AND ARBITRATION
Mediator--Antitrust, Civil Rights, Contracts (Commercial and Government),
        Defamation, Disability, Employment, Environmental, Family Law, Fraud,
        Intergovernmental, Securities
Arbitrator--United States Cases; International Chamber of Commerce

## PUBLIC SERVICE
Chair, ABA Criminal Justice Section Committee on Trial Advocacy, 1990-1996
Chair, ABA Criminal Justice Section, 2007-2008
Member, ABA Criminal Justice Standards Committee, 1996-1999
Member, ABA House of Delegates 2001-Present
Chair, ABA Justice Kennedy Commission, 2003-2004
Co-Chair, ABA Commission on Effective Criminal Sanctions 2005-2008
Vice-Chair, ABA Litigation Section Committee on Trial Evidence, 1991-1995
Member, ABA Litigation Section Council, 2001-2004
Co-Chair, ABA Litigation Section Task Force on Civil Trial Standards, 1997-1998
Chair, ABA Litigation Section Task Force on the Independent Counsel Statute, 1997-
1999
Member, ABA Special Committee on the Prosecution Function, 1991-1993

Member, ABA Task Force on the Treatment of Enemy Combatants, 2002-2009
Member, ABA Task Force on Gatekeeper Regulation and the Profession, 2002-2010
Member, ABA Task Force on Terrorism and the Law, 2001-2002
ABA Task Force on Domestic Surveillance in the Fight Against Terrorism, 2006-2009
Reporter, American College of Trial Lawyers Task Force on Litigation Issues, 1986-1988
Member, NIJ Less than Lethal Liability Panel, 1993 - 2004
Reporter, National Committee to Prevent Wrongful Executions, 2000-2002

## HONORS

Honorary Faculty Member, Judge Advocate General School, Charlottesville, Virginia
Recipient, William J. Brennan, Jr. Award, University of Virginia Trial Advocacy Institute
Member, Fellow of the American Bar Foundation, 1993 - Present
2000 ALI-ABA Francis Rawle Award for Outstanding Contributions to Post-Grad
          Legal       Education
2011 Burton Award Distinguished Award Recipient: Reform in Law

## BAR MEMBERSHIPS

California, 1971; District of Columbia, 1972; Virginia, 1977

## PUBLICATIONS

List Supplied Upon Request

**PUBLICATIONS OF STEPHEN A. SALTZBURG**
**<u>BOOKS</u>**
American Criminal Procedure (Author: First Edition 1980, Second Edition 1984,
     Third Edition 1988), (Co-Author: Fourth Edition 1992, Fifth Edition 1996,
     Sixth Edition 2000, Seventh Edition 2004, Eighth Edition 2007, Ninth Edition
     2010, Tenth Edition 2014)
Basic Criminal Procedure (Co-Author: First Edition 1994, Second Edition 1997,
     Third Edition 2003, Fourth Edition 2005, Fifth Edition 2009, Sixth Edition,
     2012)
California and Federal Evidence Trial Book (Co-Author1999)
Criminal Law: Cases and Materials (Co-Author: First Edition 1994, Second Edition
     2000, Third Edition 2008)
Emerging Problems Under the Federal Rules of Evidence (Reporter: First Edition
     1983, Second Edition 1991), (Contributing Editor: Third Edition 1998)
Evidence in America (4 Volumes) (Co-Author 1987)
Evidence: The Objection Method (Co-Author: First Edition 1997, Second Edition
     2002, Third Edition 2007, Fourth Edition 2011)
Evidence Supplement: Rules, Statutes, Commentary (1980)
Federal Criminal Jury Instructions (Co-Author) (3 Volumes, First Edition 1985,
     Second Edition 1991)
Federal Criminal Procedure Litigation Manual (Co-Author: 2011, 2012, 2013, 2014,
     2015)
Federal Rules of Evidence Manual (Co-Author: First Edition 1975, Second Edition
     1977, Third Edition 1982, Fourth Edition 1986, Fifth Edition 1990, Sixth
     Edition 1994, Seventh Edition 1998, Eighth Edition 2002, Ninth Edition 2006,
     Tenth Edition 2011)
Federal Rules of Evidence Manual: The Trial Book (1998)
Federal Rules of Evidence Trial Book (1998)
Materials on International Human Rights and U.S. Criminal Law and
     Procedure (Collaboration 1989)
Military Evidentiary Foundations (Co-Author: First Edition 1994, Second Edition
     2000, Third Edition 2007, Fourth Edition 2010)
Military Rules of Evidence Manual (Co-Author) (First Edition 1981, Second Edition
     1986, Third Edition 1991, Fourth Edition 1997, Fifth Edition 2003, Sixth
     Edition 2007; Seventh Edition 2011)
A Modern Approach to Evidence (Co-Author: First Edition 1977, Second Edition
1982)
Ohio Rules of Evidence Trial Book Co-Author 1999)
Principles of Evidence (Co-Author: Fifth Edition 2009, Sixth Edition 2012)
Texas Rules of Evidence Trial Book  (Co-Author: First Edition 2000, Second Edition
     2010, Third Edition 2015)
Trial Tactics (First Edition 2007, Second Edition 2009, Third Edition 2012)
Trying Cases to Win: Anatomy of a Trial (Co-Author 1999)
Trying Cases to Win: Evidence: Weapons for Winning: Hearsay, Confrontation (Co-
     Author 2003)
Trying Cases to Win: Evidence: Weapons for Winning: Lay Witness and Expert

Opinion (Co-Author 2004)

Trying Cases to Win: Evidence: Weapons for Winning: Relevance, Authentication, Motions in Limine, Voir Dire, Depositions (Co-Author 2000)

Trying Cases to Win: In One Volume (Co-Author 2013)

Washington Evidence Trial Book (Co-Author 1999)

## **ARTICLES**

Informant Privilege, 30 Criminal Justice 60-64 (Summer 2015)

Authentication and Hearsay: Which Trumps? 30 Criminal Justice 48-50 (Spring 2015)

Advocate Yes; Witness No, 29 Criminal Justice 34-36 (Winter 2015)

The Limitation on Exclusion of Extrinsic Evidence, 29 Criminal Justice 43-45, 55 (Fall 2014)

Litigating Against the Government, 4 GP Solo E-Report, No. 11 (August 2014)

Inconsistent Jury Verdicts, 29 Criminal Justice 27-29 (Summer 2014)

Reading Transcripts, 29 Criminal Justice 41-42, 47 (Spring 2014)

Proper and Improper Use of Other Act Evidence, 28 Criminal Justice 46-48 (Winter 2014)

Someone Must Be Lying, 28 Criminal Justice 69-71, 79 (Fall 2013)

Judicial Innovations to Screen Eyewitness Identifications, 28 Criminal Justice 38-42 (Summer 2013)

Child testimony and the Right to Present a Defense, 28 Criminal Justice 58-62 (Spring      2013)

Voice Identification Experts, 27 Criminal Justice 48-50 (Winter 2013)

Privilege Objections to Grand Jury Subpoenas for Documents, 27 Criminal Justice 44-46 (Fall 2012)

Beginning Testimony with An Overview Witness, 27 Criminal Justice 53-56 (Summer      2012)

Restyling Choices and a Mistake, 53 William and Mary Law Review 1517-1527 (2012)

One Person's Statement to Prove Another's Actions, 27 Criminal Justice 57-59, 64

(Spring 2012)

Cross-Examining the Defendant About Other Witnesses, 26 Criminal Justice 46-48
(Winter 2012)

Dissecting Declarations Against Interest, 26 Criminal Justice 51-53, 70 (Fall 2011)

Proper and Improper Closing Argument, 26 Criminal Justice  62-64 (Summer 2011)

Federal Rule of Evidence 408 and Criminal Cases, 26 Criminal Justice 41-44 (Spring
2011)

Expert Testimony and Confrontation: *Bullcoming v. New Mexico*, 2011 Emerging
Issues       5495 (Lexis.com) (Co-Author)

The Right Objection, 25 Criminal Justice 54-56 (Winter 2011)

Dual Roles: Fact and Expert Witness, 25 Criminal Justice 32-35 (Fall 2010)

Refreshing Recollection: Witnesses with Memory Problems, 25 Criminal Justice 43-46
(Summer 2010)

Dealing with Juror Misconduct, 25 Criminal Justice 20-22 (Spring 2010)

The Potential Importance of Rule 608 (b) Evidence, 24 Criminal Justice 38-40
(Winter       2010)

*Miranda*, the Functional Equivalent of Interrogation and Taint, 24 Criminal Justice
56-58 (Fall 2009)

Present Sense Impressions and the Passage of Time, 24 Criminal Justice 37-38, 41
(Summer 2009)

Using Prior Statements, 24 Criminal Justice 45-48 (Spring 2009)

Proof of a Drug Trafficking Conspiracy, 23 Criminal Justice 36-38 (Winter 2009)

Where is Criminal Justice in This Presidential Year? 23 Criminal Justice 1, 35-36
(Summer 2008)

Rule 404 (b) and Reversal on Appeal, 23 Criminal Justice 47-51 (Fall 2008)

Picking the Correct Argument, 23 Criminal Justice 50-53 (Summer 2008)

The Unrecognized Right of Criminal Defendants to Admit Their Own Pretrial
    Statements, 49 Wm. & Mary L. Rev. 1991-2039 (2008) (Co-Author)

Changes to Model Rules Impact Prosecutors, 23 Criminal Justice 1, 13-15 (Spring
    2008)

Pejorative Closing Arguments, 23 Criminal Justice 49-51 (Spring 2008)

Equipment, Hearsay, and Authentication, 22 Criminal Justice 38-41 (Winter 2008)

The Importance of an Independent Bar, 22 Criminal Justice 1, 20-23 (Winter 2008)


A Different War: Ten Key Questions About the War on Terror, 75 Geo. Wash. L. Rev.
    1021-1048 (2007)

A Better Way to Sanction Bad Behavior, 22 Criminal Justice 1, 16-17 (Fall 2007)

*Daubert* and Code Interpretation, 22 Criminal Justice 56-59 (Fall 2007)

Impeaching Cooperating Witnesses, 22 Criminal Justice 47-49 (Summer 2007)

Improper use of the Trial Judge as Voucher, 22 Criminal Justice 55-57 (Spring 2007)

Preparing for Disasters: An Introduction, 15 ABA Criminal Justice Section
    Newsletter 1-2, 16 (Winter 2007)

Improper Use of Plea Agreements to Vouch, 21 Criminal Justice 49-51 (Winter 2007)

The Fourth Amendment: Internal Revenue Code or Body of Principles? 74 George
    Washington Law Review 956-1018 (2006)

Testimonial Hearsay and Confrontation, 21 Criminal Justice 47-49 (Fall 2006)

A Grand Slam of Professional Irresponsibility and Judicial Disregard, 34 Hofstra L.
    Rev. 783-819 (2006)

Reverse Rule 404 (b) Evidence, Part II, 20 Criminal Justice 56-58 (Summer 2006)

Reverse Rule 404 (b) Evidence, Part I, 20 Criminal Justice 42-44 (Spring 2006)

Guilt Assuming Hypotheticals: Basic Character Evidence Rules, 20 Criminal Justice
    47-49 (Winter 2006)

Compulsory Process Clause, in The Heritage Guide to the Constitution 355-357
(2005)

Plea Agreements: Confrontation Versus Vouching, 20 Criminal Justice 65-67 (Fall 2005)

Other Act Evidence: The Importance of Context, 20 Criminal Justice 59-61 (Summer 2005)

Dangers of Homicidal Cross-Examination, 20 Criminal Justice 44-46 (Spring 2005)

Supplemental Arguments: Good or Bad Idea? 19 Criminal Justice 57-59 (Winter 2005)

Prior Inconsistent Statements and Collateral Matters, 19 Criminal Justice 45-47 (Fall 2004)

Threats: Bolstering of Impeaching, 19 Criminal Justice 45-46 (Summer 2004)

Privilege Versus Compulsory Process, 19 Criminal Justice 68-69 (Spring 2004)

Interpreting Code: Part II, 18 Criminal Justice 48-49, 47 (Winter 2004)

Interpreting Code: Part I, 18 Criminal Justice 46-47 (Fall 2003)

Closing Argument Vouching: Crossing the Line, 18 Criminal Justice 42-45 (Summer 2003)

The Supreme Court, Criminal Procedure and Judicial Intergrity, 40 American Criminal Law Review 133-158 (Winter 2003)

Limits on Non-hearsay Use of Statements, 18 Criminal Justice 66-70 (Spring 2003)

Three Basic Principles, 17 Criminal Justice 40-45 (Winter 2003)

Offers of Proof: The Basic Requirement, 17 Criminal Justice 50-54 (Fall 2002)

Questioning the Judicial Role in Dealing with Expert Testimony in Complex & Non-Complex Cases, 3 The Sedona Conference Journal 185-197 (Fall 2002)

Permissible, Impermissible Corroboration of Witnesses, 17 Criminal Justice 36-39 (Spring       2002)

Declarations Against Interest and the Confrontation Clause, 16 Criminal Justice 51-57       (Winter 2002)

Declarations Against Interest, 16 Criminal Justice 36-39 (Fall 2001)

Due Process, History, and *Apprendi v. New Jersey*, 38 American Criminal Law Review
        243-253 (2001)

Keeping the Reformist Spirit Alive in Evidence Law, 149 University of Pennsylvania
        Law Review 1277-1293 (2001)

Opening the Door to Bolstering, 16 Criminal Justice 50-55 (Summer 2001)

Inextricably Intertwined?  Maybe Not, 16 Criminal Justice 60-65 (Spring 2001)

Excited Utterances and Family Violence, 15 Criminal Justice 39-43 (Winter 2001)

Third Party Hearsay Exceptions for Business Records, 15 Criminal Justice 36-40
        (Fall          2000)

Rhetorical Questioning, 15 Criminal Justice 38-41, 61 (Summer 2000)


Perjury and False Testimony: Should the Difference Matter So Much, 68 Fordham
        Law Review 1537-1580 (April 2000)

Importance of Corroboration: Self-Defense as an Example, 15 Criminal Justice 65-69
        (Spring 2000)

Self-Defense and the Rules of Evidence, 14 Criminal Justice 46-50 (Winter 2000)

The Unusual Harm from a Compound Question, 14 Criminal Justice 40-41, 44-46
        (Fall          1999)
Race: Fair and Unfair Use, 14 Criminal Justice 36-40, 56 (Summer 1999)

Admissibility of Pretrial Proffers at Trial, 14 Criminal Justice 36-39, 44 ( Spring 1999)

Judges Interrogate Witnesses: Crossing the Line, 13 Criminal Justice 40-44 (Winter
        1999)

*Terry v. Ohio*: A Practically Perfect Doctrine, 72 St. John=s Law Review 911-974
        (Summer-Fall 1998)

Opinions on Intent: Mirroring Facts of the Case, 13 Criminal Justice 21-24 (Fall 1998)

Non-English-Speaking Witnesses and Leading Questions, 13 Criminal Justice 37-41
        (Summer 1998)

Trial Judge Reverses Course: *In Limine* Rulings, 13 Criminal Justice 31-35 (Spring
        1998)

Transcripts of Tapes, 12 Criminal Justice 30-34 (Winter 1998)

Authentication: Multiple Defendants, 12 Criminal Justice 50-53(Fall 1997)

Authenticating Evidence: Some Basics, 12 Criminal Justice 57-51 (Summer 1997)

Stipulations, Probative Value and Unfair Prejudice, 12 Criminal Justice 45-48 (Spring 1997)

Rule of Completeness and Post-Arrest Statements, 11 Criminal Justice 40-42 (Winter 1997)

Improper Witness Vouching, Attacks on Counsel, 11 Criminal Justice 48-51 (Fall 1996)

Limiting Closing Arguments About Evidence, 11 Criminal Justice 42-44 (Summer 1996)

Bias Evidence and Gang Membership, 11 Criminal Justice 46-50 (Spring 1996)

Summaries: Two Types, 10 Criminal Justice 33-36 (Winter 1996)

The Top Ten List: Rules Lawyers Must Know, 22 Litigation 6-10, 71-72

Stipulations, Part III: Convicted Felons on Trial, 10 Criminal Justice 31-34 (Summer 1995)

Stipulations to Exclude Other Act Evidence: What is Adequate, 10 Criminal Justice 39-42 (Spring 1995)

Stipulations by the Defense to Remove Other Act Evidence, 9 Criminal Justice 35-40 (Winter 1995)

Hearsay Exceptions for Business and Public Records, 9 Criminal Justice 40-43 (Fall 1994)

Testimony from an Opinion Witness: Avoid Using the Word "Expert" at Trial, 9 Criminal Justice 35-38 (Summer, 1994)

Expert Opinions by Mental Health Professionals: The Challenges of FRE 704 (b), 9 Criminal Justice 31-35 (Spring 1994)

The Trial Judge as Gatekeeper: Expert Testimony after <u>Daubert</u>, 8 Criminal Justice 38-41 (Winter 1994)

Criminal Procedure in the 1960s: A Reality Check, 42 Drake Law Review 179-203 (1993)

Opinions by Expert Witnesses: Testifying to Ultimate Issues, 8 Criminal Justice 32-35 (Fall 1993)

A Last Word on Impeaching the Witness with Prior "Bad Acts," 8 Criminal Justice 37-40
(Summer 1993)

Improving the Quality of Jury Decisionmaking, 341-377, in Verdict: Assessing the Civil Jury System (1993)

Uncharged Acts: Substantive versus Impeachment Use, 8 Criminal Justice 35-38 (Spring 1993)

Impeaching the Witness: Prior "Bad Acts" and Extrinsic Evidence, 7 Criminal Justice 28-31 (Winter 1993)

Former Testimony, Similar Motive, and Constitutional Implications, 7 Criminal Justice     29-33 (Fall 1992)

Hearsay, Confrontation and Sufficiency, 7 Criminal Justice 39-42 (Summer 1992)

Sentencing Procedures: Where Does Responsibility Lie, Federal Sentencing Reporter 247-50  (March/April 1992)

Polygraph Evidence, Key Witnesses, Deals, Experts...and the Door Opens, 7 Criminal Justice 37-41 (Spring 1992)

Proper and Improper Handling of Uncharged Crimes, 6 Criminal Justice 43-46 (Fall 1991)

Prior Inconsistent Statements: Fair and Unfair Use, 6 Criminal Justice 45-49 (Summer     1991)

The Control of Conduct in Criminal Organizations, 71 Boston University Law Review 421-438 (March 1991)

Bolstering and Attacking the Cooperating Witness, 6 Criminal Justice 43-45 (Spring 1991)

 Other Act Evidence: A Change in Discovery Practice, 5 Criminal Justice 34-35 (Winter     1991)

National Security and the Fourth and Fifth Amendments (Chapter 22 in National
    Security Law) 1001-1032 (Caroline Academic Press 1990)

National Security and Privacy: Of Governments and Individuals Under the
    Constitution and the Foreign Intelligence Surveillance Act, 28 Va. J. Int'l L.
    129-155 (1987)

*Miranda v. Arizona* Revisited: Constitutional Law or Judicial Fiat, 26 Washburn Law
    Journal 1-26  (1986)

Another Victim of Illegal Narcotics: The Fourth-Amendment (as Illustrated by the
    Open Fields Doctrine), 48 University of Pittsburgh Law Review 1-25 (1986)

Impeachment of Witnesses and the Federal Rules of Evidence, 22 Criminal Law
    Bulletin 101-117 (1986)

The Required Records Doctrine: Its Lessons for the Privilege Against Self-
    Incrimination, 53 Chicago Law Review 6-44 (1986)

Lawyers, Clients, and the Adversary System, 37 Mercer Law Review 674-700 (1986)

Understanding the Jury with the Help of Social Science, 83 Michigan Law Review
    1120-1140 (1985)

Corporate Attorney-Client Privilege in Shareholder Litigation and Similar Cases:
    <u>Garner</u> Revisited, 12 Hofstra Law Review 817-848 (1984)

Pretrial Discovery of Scientific Evidence, 101 F.R.D. 613-621 (1984)

Corporate and Related Attorney-Client Privilege Claims:  A Suggested Approach, 12
    Hofstra L. Rev. 279-321 (1984)

Frye and Alternatives, 99 Federal Rules Decisions 208-218 (1983)

Habeas Corpus:  The Supreme Court and the Congress, 44 Ohio State Law Journal
    367-391 (1983)
Burdens of Persuasion in Criminal Cases:  Harmonizing the Views of the Justices, 20
    American Criminal Law Review 393-421 (1983)

Peremptory Challenges and the Clash Between Impartiality and Group
    Representation, 41 Maryland Law Review 337-383 (1982) (with Mary Ellen
    Powers)

Tactics of the Motion in Limine, 9 Litigation No. 4, at 17-21, 63 (1983)

Communications Failing Within the Attorney-Client Privilege, 66 Iowa Law Review

811-841 (1981)

The Flow and Ebb of Constitutional Criminal Procedure in the Warren and Burger
    Courts, 69 Georgetown Law Journal 151-209 (1980)

The Reach of the Bill of Rights Beyond the Terra Firma of the United States, 20
    Virginia        Journal of International Law 741-776 (1980)

Privileges and Professionals:  Lawyers and Psychiatrists, 66 Virginia Law Review
    597-651 (1980)

Virginia's Model Jury Instructions for Criminal Cases, 6 Virginia Bar Journal 16-22,
    26
    (Spring 1980)

The Unnecessarily Expanding Role of the American Trial Judge, 64 Virginia Law
    Review 1-81 (1978)

A Special Aspect of Relevance: Countering Negative Inferences Associated with the
    Absence of Evidence, 66 University of California Law Review 1015-1060
    (1978)

Pleas of Guilty and the Loss of Constitutional Rights: The Current Price of Pleading
    Guilty, 76 Michigan Law Review 1265-1307 (1978)

The Federal Rules of Evidence and the Quality of Practice in Federal Courts, 27
    Cleveland State Law Review 173-194 (1978)

Discovering and Applying Foreign and International Law in Domestic Tribunals, 18
    Virginia Journal of International Law 611-618 (1978)

Standards of Proof and Preliminary Questions of Fact, 27 Stanford Law Review 271-
305 (1975)

Another Ground for Decision--Harmless Trial Court Errors, 47 Temple Law
    Quarterly 193-277 (1974)

The Harm of Harmless Error, 59 Virginia Law Review 988-1032 (1973)


**BOOK REVIEW**
The Closed Enterprise System, 121 University of Pennsylvania Law Review 176-185
(1972)

**<u>NEWSPAPER SERIES</u>**

Analyzing the Supreme Court for Non-Lawyers, Series 1972-73  (approximately 25
    articles), The Daily Progress, Charlottesville, VA


**<u>MISCELLANEOUS</u>**

Moderator, The Future of Class Actions in Mass Tort Cases: A Roundtable Discussion,
    66 Fordham L. Rev. 1657-1698 (April 1998)

Panel Discussion--Jury Nullification, 145 F.R.D. 166-193 (March 1993)

The Federal Rules of Evidence and the Continuing Education of  Judges and Lawyers,
    5 Virginia Law School Report 6  (Winter 1981)

Personal Jurisdiction:  Some History and Trends in the Supreme Court, in ALI-ABA
    Civil Practice and Litigation in Federal  and State Courts, Vol. I, at 33-86
    (1981) Foreword to Fa, A Comparative Study of Judicial Review Under
    Nationalist Chinese and American Constitutional Law (University of
    Maryland Press, 1980)